[No. 48394-9.   En Banc.   August 12, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. HOWARD G. PARKER, *Appellant.*

*Robert M. Quillian,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Chris Pomeroy, Deputy,* for respondent.

DOLLIVER, J.—On the morning of June 9, 1979, defendant, Howard G. Parker, rented a camping site in Olympia. He paid for the camping site, some beer, and some groceries with personal checks. He was later seen around the camp store consuming a quantity of beer and talking with fellow campers.

About 11 a.m., the owner left the campground and gave instructions to his daughter not to accept any more of defendant's checks. Shortly thereafter, defendant tried to cash a check to pay for more beer and groceries. When the owner's daughter refused, defendant became abusive and threatened her. She called her father who immediately returned and angrily confronted the defendant. The owner then left the scene of the argument and called the sheriff.

The sheriff's deputies arrived and, after a short talk with the owner, they proceeded to the defendant's camping site. There they saw Parker standing in the back of his boat with a young boy, Lance Rodgers, who was just under 6 years old. Lance had his mother's permission to be with

defendant. As one of the deputies approached the boat, the defendant reached inside the boat and stood up with a rifle in his hands. The deputies drew their revolvers and several times ordered the defendant to put down the rifle. The boy appeared frightened and started to get out of the boat but was told by the defendant not to leave. One of the deputies told Lance to get out of the boat. In response to the order to put down the rifle, defendant threatened to set off a Claymore mine (a very effective antipersonnel weapon used in Vietnam), which he claimed to have in the boat. Defendant then turned to the boy and asked, "Would you like to see the pigs die?"

At that point, defendant turned toward the deputy and, with his finger in the trigger guard, started to swing the rifle in the direction of the deputy. Deputy Sweeney fired two rounds from his revolver, one of which struck the defendant. The defendant's rifle also discharged, and the .308 round hit the ground approximately 7 feet in front of Deputy Sweeney.

The two officers testified they did not see defendant touch Lance during the incident. Lance testified that Parker, while holding the gun in one hand and grabbing him around the neck with the other, told Lance not to leave the boat. Lance testified he was afraid he would be shot. He specifically remembered defendant told the officers he would not "put down my gun" and would "shoot this kid".

The defendant claimed he told Lance not to get off the boat because he was "afraid he [Lance] was going to be shot." Defendant claimed the reason for his concern was because he had seen "many young children get shot in Viet Nam just by standing close to a soldier." He testified that, after he told Lance not to move, he turned to the officers to tell them he was going to put down his rifle and they shot him. He said he never "grabbed" or "touched" Lance although he assumed the boy was quite frightened.

Pursuant to court order, prior to trial defendant was admitted to Western State Hospital's Mentally Ill Offender Program for observation, evaluation, and treatment. The

clinical director, staff psychiatrist, and clinical psychologist concluded he was competent to stand trial, understood the nature of the proceedings against him, and was able to assist his attorney in his own defense if he desired. They also concluded due to the defendant's violent behavior certain drugs were needed to "control his violence and hostility." These drugs were discontinued prior to trial.

Defendant was charged with first degree assault and unlawful imprisonment, both crimes alleged to have been committed while armed with a deadly weapon. A jury convicted him of second degree assault and unlawful imprisonment, both counts while armed with a deadly weapon. We affirm those convictions.

The defendant on appeal alleged RCW 9A.40.040(1), the unlawful imprisonment statute, is unconstitutionally vague. Parenthetically it should be noted defendant also claims the statute is constitutionally overbroad. The overbreadth argument, however, is applicable only when there is a question whether the statute prohibits constitutionally protected activity. *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977). It is inappropriate here.

The Court of Appeals certified the appeal to us pursuant to RCW 2.06.030(d) to determine whether RCW 9A.40 is deficient because, by employing the term "knowingly" without requiring further proof of a mens rea, it potentially sweeps within its ambit well intentioned, innocent motives.

In an attempt to show this mistake could be made, defendant offers a letter from the jury foreman to the presiding judge on the foreman's impression of the jury's motives:

> I would like to make a comment regarding the trial of Howard Parker. The jury did not want to convict Mr. Parker on the charge of unlawful imprisonment—they felt he meant the child no harm and may have been, as he said he was, concerned for the safety of the boy. They did not think he wanted to hold the boy hostage. However, the instructions to the jury on this charge did not include any consideration of the intent of the defendant. Our consideration of each of the factors of the instruc-

tions related to unlawful imprisonment left us no alternative but to vote "guilty."

■ The question of vagueness is answered by examining the statute. RCW 9A.40.040(1) provides: "A person is guilty of unlawful imprisonment if he knowingly restrains another person." If this comprised the entire statute with no further provisions or references, we might be inclined to agree with the position of the defendant. When construing a statute, however, we must read it in its entirety and not piecemeal. *Tommy P. v. Board of Cy. Comm'rs*, 97 Wn.2d 385, 645 P.2d 697 (1982).

■■ RCW 9A.40.010(1) provides a definitional section as follows:

"Restrain" means to restrict a person's movements *without consent* and *without legal authority* in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

(Italics ours.) Read as a whole the statute is not vague, nor an unreasonable expression of the State's police power. The concern raised by the Court of Appeals in its certification as to the term "knowingly" is fully answered in the definition of "restrain" contained in RCW 9A.40.010(1). Reading these sections together a reasonable person would be put on notice as to what conduct is prohibited. *See State v. Grisby*, 97 Wn.2d 493, 647 P.2d 6 (1982).

■ As to the statement of the jury foreman, the question was not whether defendant intended to hold Lance Rodgers hostage but whether he had committed the crime of unlawful imprisonment. Furthermore, a state may punish conduct alone without making intent an element of the crime. *State v. Stroh*, 91 Wn.2d 580, 584, 588 P.2d 1182, 8 A.L.R.4th 760 (1979). The jury instruction was taken from the statute and said:

A person commits the crime of unlawful imprisonment when he or she knowingly restrains another person by restricting that person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty. The restraint is without consent if it is accomplished by physical force, intimidation or deception or any means including acquiescence, if the victim is a child less than 16 years old and if the parent has not acquiesced.

This is a proper statement of the law.

In any event, defendant neither offered an alternative instruction nor excepted to the given instruction. We need not consider error claimed in an instruction when the trial court had an opportunity to pass on the alleged errors and correct them. *State v. Robinson,* 92 Wn.2d 357, 361, 597 P.2d 892 (1979). This was not done here and the instructions became the law of the case. *Robinson,* at 359.

The statute is not vague and can be reasonably construed. Defendant raises a number of other issues in his brief, all of which go to the allegation the trial court abused its discretion. We find no abuse; the record supports the conviction.

Affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.