[No. 14262-7-II.   Division Two.   October 2, 1992.]

ITT RAYONIER, INC., *Appellant,* v. MARVIN A. DALMAN,
ET AL, *Respondents.*

*Elizabeth K. Reeve* and *Schwabe, Williamson & Wyatt,* for appellant.

*James R. Walsh,* for respondent Dalman.

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* for respondent Department of Labor and Industries.

PETRICH, C.J. — ITT Rayonier, a self-insured employer for industrial insurance purposes, appeals from an order on summary judgment, which affirmed a ruling of the Board of Industrial Insurance Appeals (Board) in favor of Marvin Dalman, an ITT Rayonier employee, and the Department of Labor and Industries' (Department) holding that the Department could review an earlier employability determination despite ITT Rayonier's claim that review was time barred. ITT Rayonier also challenges the trial court's affirmance of the Department's decision that the case file was insufficient to establish Dalman's employability, thus requiring a remand of the case to ITT Rayonier. We affirm both trial court decisions.

On February 24, 1986, Marvin Dalman was injured while working for ITT Rayonier. Dalman filed a disability claim.

ITT Rayonier accepted the claim and began paying industrial insurance benefits. On January 8, 1987, the Department found Dalman to be employable and, thus, no longer eligible for vocational services. Six days later, on January 14, the Department informed Dalman by letter of its finding and that he had 15 days to file a protest.[1] On January 19, 1987, ITT Rayonier sent to the Department a form SIF-5, Self-Insurer's Report of Occupational Injury or Disease, to report final payment of time loss.[2] On February 5, 1987, Dalman sent a letter to ITT Rayonier and to the Department formally protesting the SIF-5 and requesting reconsideration of the final payment report, "which report finds the claimant employable." On February 9, the Department received a copy of Dalman's letter.

Over 6 months later, on August 25, 1987, Dalman wrote to the Department explaining the reasons he remained unemployable. The next day, the Department issued a letter accepting review of Dalman's dispute, saying that it had misfiled his earlier protest, and that Dalman had "filed [it] in a timely manner." On September 4, 1987, the Director found that the information in the case file was insufficient to establish employability and returned the case to ITT Rayonier. ITT Rayonier then appealed to the Board of Industrial Insurance Appeals, which upheld the Department decision. ITT Rayonier then appealed to the Clallam County Superior Court, which also ruled in the Department's favor.

On appeal to this court, ITT Rayonier contends that the trial court erred in ruling as a matter of law that Dalman did not fail to timely file a challenge to the Department's determination of employability, and in ruling that the Department did not act arbitrarily and capriciously in deciding that it had insufficient evidence to make a determination of employability.

---

[1]Because 15 calendar days from the receipt of the letter (January 16) fell on a Saturday (January 31, 1987), Dalman had until Monday, February 2, 1987, to file his protest. WAC 263-12-175.

[2]ITT Rayonier acted through its representative, Fred S. James Co., of Portland, Oregon.

■■ The appellate court reviewing a summary judgment considers the matter de novo and makes the same inquiry as the trial court; summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue about any material fact and, assuming facts most favorable to the nonmoving party, establishes that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). When the facts are undisputed and the only issues are questions of law, review is de novo. *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 753, 807 P.2d 876 (1991).

## I
### TIMELINESS OF DISPUTE

■ The first question presented is one of statutory construction, which is a question of law. *Everist v. Department of Labor & Indus.*, 57 Wn. App. 483, 486, 789 P.2d 760, *review denied*, 114 Wn.2d 1027 (1990).

The Department letter of January 14, 1987, to Dalman provided:

> I have reviewed the Employability Assessment Report (EAR) submitted by your employer. Your employer has determined that you are *not eligible* for rehabilitation services and I concur. This determination may affect your time loss benefits. Please refer to your copy of the EAR which has been provided to you.
> If you or the referral source wish to dispute this determination, a *WRITTEN* request *must* be received within 15 calendar days from the date of receipt of this letter. The reasons for the dispute must be stated in the request.

This letter is consistent with WAC 296-18A-470(2), which provides:

> (2) The director must receive a dispute of the employability determination or formal plan, in writing, within fifteen calendar days from receipt of notification to the worker or employer. The dispute must include reasons for the request. The director, at his or her sole discretion, may initiate an investigation to determine further action on the request. A copy of all disputes received shall be sent to all interested parties.

WAC 296-18A-470(1) modifies the strict time limits in subsection (2), noted above. It provides:

(1) In order to avoid delay in the vocational rehabilitation process and to allow resolution of disputes between the injured workers, employers and the referral source, a dispute resolution process is provided. The time limits in this section may be extended by the office of rehabilitation services when good cause is shown.

The statutory authority for these WAC provisions is RCW 51.32.095(6), which provides:

(6) The benefits in this section shall be provided for the injured workers of self-insured employers. Self-insurers shall report both benefits provided and benefits denied under this section in the manner prescribed by the department by rule adopted under chapter 34.05 RCW. The director may, in his or her sole discretion and upon his or her own initiative or at any time that a dispute arises under this section, promptly make such inquiries as circumstances require and take such other action as he or she considers will properly determine the matter and protect the rights of the parties.

ITT Rayonier contends that Dalman failed to perfect his appeal of the Department's employability determination because his February 5, 1987, letter was not a dispute of the Department's employability determination, but asked for reconsideration of the SIF-5 report; that the letter did not include reasons for the request; and that the Department did not receive it within the 15-day required period. ITT Rayonier also contends that the Department letter dated August 26, 1987, which stated that Dalman's request "was filed in a timely manner" was in error. Finally, ITT Rayonier contends that neither Dalman nor the Department showed good cause to extend the time limits for filing a dispute.

The Superior Court based its decision on RCW 51.32-.095(6):

[F]or the court to find that WAC 296-18A-470(2) is a jurisdictional limitation on bringing an action would fly in the face of the provisions of RCW 51.32.095(6) that allows the director, in his "sole discretion" and "at any time" to do what is necessary, and that would elevate the administrative regulation over the apparent legislative intent to allow the director to take the necessary action "at any time". The court cannot hold that the administrative regulation has that effect; therefore, the claimant's letter of dispute of February 5, 1987, upon which the director acted, was timely submitted.

ITT Rayonier contends that the trial court's reasoning is flawed because RCW 51.32.095(6), by use of the language "at any time that a dispute arises under this section", presupposes that a dispute was timely submitted. In other words, the Director lacks the authority to consider disputes that a claimant initiates that are not properly and timely submitted, and an action by the Director does not make an untimely dispute timely. ITT Rayonier also argues that the trial court's position creates prejudice against both employers and claimants because it eliminates the finality of Department decisions, and that it renders the WAC provision superfluous.[3]

This court's duty is to give effect to the intent of the Legislature. *Grant v. Spellman*, 99 Wn.2d 815, 818, 664 P.2d 1227 (1983). We agree with the Department and Dalman that RCW 51.32.095(6) is unambiguous and, therefore, not subject to statutory construction. Unless a statute is ambiguous, its meaning must be derived from the wording of the statute itself and judicial construction is unnecessary. *Crown Cascade, Inc. v. O'Neal*, 100 Wn.2d 256, 263, 668 P.2d 585 (1983). Here the Director acted within his "sole discretion" to act "at any time that a dispute arises" and to "take such other action as he or she considers will properly determine the matter and protect the rights of the parties." Nothing in the statute suggests that a claimant must file a written or formal dispute before the Director can consider, investigate, and take action upon it.

WAC 296-18A-470(1) allows the office of rehabilitation services, which is subject to the Director's ultimate authority, to extend the time limits when there is good cause. While this regulation can be read to require a claimant to present reasons for his request, nothing in the regulation prevents the director from acting upon his own initiative and without formal findings of good cause. In reviewing administrative

---

[3]Because the issue was not fully briefed or argued we do not consider ITT Rayonier's contention that the trial court's interpretation creates differing treatment between self-insurers and state fund employers as the Director only has this discretion in self-insurer cases.

rules, we presume that they are adopted pursuant to a legislative grant of authority and are valid, and we will uphold such rules if they are reasonably consistent with the statute. *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980). To read the regulation as ITT Rayonier suggests would allow the Department to limit the director's express statutory authority. Such an act would be beyond the legislative grant of authority to the Department.

We find the statute and regulation unambiguous and refuse to read into them what is not there and what is contrary to the Legislature's and the administrative agency's intent. Finally, our interpretation of the statute and regulation together does not render the WAC provisions superfluous; the WAC continues to regulate those disputes initiated by the claimant who files a written claim in a timely manner when the Director has not exercised an investigation upon his own initiative.

## II

### DECISION TO REMAND EMPLOYABILITY DETERMINATION

■ In order for a trial court or an appellate court to reverse a discretionary agency decision under review, it must find that the decision was manifestly unreasonable. *Hadley v. Department of Labor & Indus.*, 116 Wn.2d 897, 906, 810 P.2d 500, 814 P.2d 666 (1991). This abuse of discretion standard has also been defined as discretion exercised on untenable grounds or for untenable reasons. *Wilson v. Board of Governors*, 90 Wn.2d 649, 656, 585 P.2d 136 (1978), *cert. denied*, 440 U.S. 960 (1979).

The September 4, 1987, letter to ITT Rayonier shows that the Department had before it Dalman's latest physical capacities evaluation, two panel examinations, job analyses approved by the attending physician, the entry level requirements of the proposed jobs, and a labor market survey showing the jobs' availability. However, the Department said, "The problem is that it is unclear whether Mr. Dalman has the needed physical ability to do these jobs." It found that the physical capacities examination presented limitations that "do not appear compatible with the physical demands of

security guard or watchman." It found that the panel examinations gave general physical limitations but that they "were not specifically defined." It found that the job analyses failed to "quantitatively (measurably)" define the physical demands of the jobs. Finally, the letter said that a new determination would have to be made on Dalman's employability. The Department said, "It is suggested that job analyses (presenting the physical demands in measurable terms) be obtained and approved by the attending physician if the jobs of security guard or watchman are to be pursued further."

ITT Rayonier simply contends that this information was sufficient to make the necessary employability determination, but fails to show how the documentation that was available addressed the Department's concerns about lack of specificity. As such, it fails to show that the Department's decision to postpone making an employability determination was manifestly unreasonable. Having already found that the director acted with proper authority in reviewing the employability determination, we find no error.

Judgment affirmed.

ALEXANDER and MORGAN, JJ., concur.

Review granted at 121 Wn.2d 1007 (1993).