[No. 60024-4. En Banc. December 9, 1993.]

ITT RAYONIER, INC., *Petitioner*, v. MARVIN A. DALMAN, ET AL, *Respondents*.

802

*Schwabe, Williamson, Ferguson & Burdell,* by *Elizabeth K. Reeve,* for petitioner.

*James R. Walsh,* for respondent Dalman.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for respondent State.

UTTER, J. — ITT Rayonier, Inc. (ITT), a self-insured employer, appeals a Court of Appeals opinion affirming a Department of Labor and Industries decision. That opinion held ITT failed to establish the employability of its former worker, Marvin Dalman. ITT contends Dalman's challenge to the Department's employability determination was untimely and even if it had been timely, it established employability, mak-

ing further investigation by the agency an abuse of discretion.[1] We affirm the Court of Appeals.

Marvin Dalman was injured at work in February 1986. On January 14, 1987, a supervisor's designee with the Department of Labor and Industries (Department) wrote to Dalman and told him that based on a review of an Employability Assessment Report submitted by ITT, Dalman was not eligible for rehabilitation services. Exhibit 2, attachment 2. Brown concluded Dalman was employable without retraining. The letter stated that if Dalman intended to dispute the employability conclusion, "a *WRITTEN* request *must* be received within 15 calendar days from the date of the receipt of [the] letter. The reasons for the dispute must be stated in the request." Exhibit 2, attachment 2.

Dalman's attorney received a copy of the letter on January 16, 1987. Stipulation of Parties, at 2. ITT also received a copy of the letter, and used it to determine Dalman's time-loss benefits. On January 19, ITT Rayonier issued an "SIF-5" form, which reported its final payment to Dalman and noted that Dalman was "[f]ound employable effective 1/8/87". Exhibit 2, attachment 3. Dalman received a copy of this form. On February 5, 1987, his attorney wrote a letter to ITT's insurer, Fred S. James & Co., and the Department, in which he said "Please regard this as formal protest and request for reconsideration of the Self-Insurer's Report on Occupational Injury or Disease dated 1/19/87, which report finds the claimant employable effective 1/8/87." Exhibit 2, attachment 5.

---

[1]ITT also contends that RCW 51.32.095 violates the equal protection clause because it applies only to self-insured employers. The Court of Appeals refused to reach the question because it was not briefed. Moreover, at oral argument before that court, ITT stated it was not making an equal protection argument. Because the argument was not properly made below, we do not address it here. *See* RAP 2.5 and 10.3(a)(5). *See also Hoflin v. Ocean Shores*, 121 Wn.2d 113, 130, 847 P.2d 428 (1993).

The Department did not respond to the letter. On August 25, Dalman's attorney wrote to the Department to advise it "more fully" of the reasons why Dalman believed he was not employable: Dalman was nearing 58 years of age, had worked primarily as a heavy machine operator for logging companies, and had only an eighth grade education. Exhibit 2, attachment 7.

The next day, Gary Larson, a rehabilitation reviewer with the Department, responded by letter, stating Dalman's dispute "was filed in a timely manner" and had been accepted for review. Exhibit 2, attachment 8. Larson explained that the original dispute had been misfiled and that the Department's file and all available written information would be reviewed within 30 days.

On September 4, the Director of the Department, Joseph Dear, informed Dalman in writing that the Department file did not clearly establish he was physically fit to be employed in the suggested occupations of security guard or watchman. The Director indicated the case would be sent back to ITT Rayonier to make a more thorough employability determination. See exhibit 2, attachment 9.

A letter was also sent to ITT by rehabilitation reviewer Mark Holm. Holm explained it was unclear whether Dalman had the physical capacity to be a security guard or watchman. The letter noted that the most recent physical capacities evaluation had been conducted in December 1986; the limitations noted there did not appear compatible with a security guard or watchman position; and two examinations conducted in March and June 1987 imposed general physical limitations on lifting and prolonged sitting and standing, but did not specifically define these limitations. Exhibit 2, attachment 10. The letter also noted the physician's approval of the security guard and watchman positions was based on a job analysis that did not specifically describe the physical demands to which Dalman would be subject. Exhibit 2, attachment 10.

ITT appealed to an administrative appeals judge. The judge held a hearing and took testimony from the only witness presented, John Berg, the vocational rehabilitation counselor

who had evaluated Dalman for ITT Rayonier and concluded Dalman was employable without retraining.

Berg testified he reached his decision after reviewing Dalman's medical file and interviewing him. Berg considered Dalman's work history, education, daily activities, and a physical capabilities report prepared by Dalman's doctor indicating Dalman could sit for up to 2 hours in an 8-hour day. See testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 12, 21. Berg stated Dalman had told him he could lift 21 to 25 pounds on an occasional basis and had no restrictions on pushing or pulling or the use of his hands. Testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 21. Berg testified the report indicated further that Dalman could not bend, squat, crawl, or kneel.

Based on this information, Berg decided Dalman could be employed as a security guard or watchman. Berg prepared a job analysis of these positions as they related to Dalman's physical abilities, and said Dalman's doctor approved the positions. Berg explained the positions were classified as light duty since they typically required 4 to 6 hours standing, but did not exceed the light duty lifting and carrying maximum, which is 0 to 10 pounds frequently and lifting and carrying up to 20 pounds occasionally. Testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 26. Berg also stated that Dalman's doctor's report indicated Dalman had physical capabilities "slightly above light duty". Testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 26. Based on this information, Berg testified Dalman could be a security guard or watchman.

The judge wrote a proposed decision in which she concluded the Department had authority to consider Dalman's allegedly untimely dispute and that the Department did not act arbitrarily and capriciously in determining ITT had not satisfactorily established Dalman's employability. Certified Appeal Board Record, at 18-21. She explained that she could only consider the information before the Department at the

time of its decision. Certified Appeal Board Record, at 22. She reasoned that if the Department had before it all the information to which Berg had testified its rejection of that information would have been a " 'willful and unreasoning action in disregard of facts and circumstances.' " Certified Appeal Board Record, at 22. The judge noted however that there was little evidence in the record establishing the exact content of the information before the Department when it made its evaluation. She therefore affirmed the Department's decision.

ITT appealed to the Board of Industrial Insurance Appeals, which denied the appeal and adopted the administrative law judge's proposed opinion as its final order. Certified Appeal Board Record, at 1. ITT then appealed to the Clallam County Superior Court, which affirmed. See Clerk's Papers, at 15-18. The Court of Appeals affirmed the Superior Court. *ITT Rayonier, Inc. v. Dalman*, 67 Wn. App. 504, 837 P.2d 647 (1992). ITT now seeks review in this court. We affirm the Court of Appeals.

I

DEPARTMENT DISCRETION TO DECIDE DISPUTES

ITT argues the Department lacked authority to consider Dalman's challenge to the initial employability decision because both the timing and content of Dalman's response were inadequate. More specifically, ITT maintains Dalman did not file a written notice stating the reasons for his challenge within the 15-day limit prescribed by WAC 296-18A-470(2). That provision states:

(2) *The director **must** receive a dispute of the employability determination or formal plan, in writing, within fifteen calendar days from receipt of notification to the worker or employer.* The dispute must include reasons for the request. The director, at his or her sole discretion, may initiate an investigation to determine further action on the request.

(Italics and boldface ours.) WAC 296-18A-470(2).

ITT's argument assumes the Director's authority to investigate disputes derives from receipt of notification from the complainant within 15 days. Thus, if a dispute is not timely made, the Director lacks the power to act.

■ The argument has some initial appeal, as it gives effect to the term "must" in WAC 296-18A-470(2). The difficulty with ITT's reading of the word "must" in WAC 296-18A-470(2), however, is that it considers the term in isolation, rather than within the context of the regulatory and statutory scheme as a whole. Statutory provisions must be read in their entirety and construed together, not piecemeal. *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 415, 757 P.2d 1378 (1988) (citing *State v. Parker*, 97 Wn.2d 737, 741, 649 P.2d 637 (1982)); *Vaughn v. Chung*, 119 Wn.2d 273, 282, 830 P.2d 668 (1992).

When the other parts of WAC 296-18A-470 and the governing statute, RCW 51.32.095, are considered together, it is apparent the 15-day period was not designed to limit the Director's discretion in the manner ITT suggests.[2]

■ First, the express language in WAC 296-18A-470 indicates the 15-day limit was not intended to be an absolute barrier to contesting employability decisions. The first subsection of WAC 296-18A-470 states:

> (1) In order to avoid delay in the vocational rehabilitation process and to allow resolution of disputes between the injured workers, employers and the referral source, a dispute resolution process is provided. *The time limits in this section may be extended by the office of rehabilitation services when good cause is shown.*

(Italics ours.) The regulation itself, then, indicates the agency has the power to extend the time limitation. As the Court of Appeals noted, although a claimant may ask for an extension upon a showing of good cause, nothing in the above language prohibits the Director, who oversees the office of rehabilitation services, from acting upon his or her own initiative, even without a formal finding of good cause. *See ITT Rayonier, Inc. v. Dalman*, 67 Wn. App. 504, 509, 837 P.2d 647 (1992).

---

[2]This case is thus different from *Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 852 P.2d 288 (1993). There, we interpreted the term "shall" in RCW 49.17.140(3) to impose a mandatory requirement that appeals be brought within the specified time period. Our reasoning in that case was premised on the absence of any indication of a contrary legislative intent. Unlike that case, the statute at issue here, read as a whole, does manifest a contrary legislative intent.

More important still, the language of the enabling legislation grants the Director broad discretion to consider claims at any time, and expresses a preference for deciding disputes on the merits. RCW 51.32.095(6) provides:

> The benefits in this section shall be provided for the injured workers of self-insured employers. Self-insurers shall report both the benefits provided and benefits denied under this section in the manner prescribed by the department by rule adopted under chapter 34.05 RCW. *The director may, **in his or her sole discretion** and **upon his or her own initiative** or at any time that a dispute arises under this section, promptly make such inquiries as circumstances require and take such other action as he or she considers will properly determine the matter and protect the rights of the parties.*

(Italics and boldface ours.)

Not only is ITT's construction of WAC 296-18A-470 at odds with the Legislature's broad grant of authority to the Director in RCW 51.32.095(6), it is also inconsistent with the legislative directive the statute be liberally construed to effectuate its purpose. *See* RCW 51.12.010; *Clark v. Pacificorp*, 118 Wn.2d 167, 179-80, 822 P.2d 162 (1991) (quoting *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987)); *Department of Labor & Indus. v. Landon*, 117 Wn.2d 122, 126, 814 P.2d 626 (1991); *Bolin v. Kitsap Cy.*, 114 Wn.2d 70, 72, 785 P.2d 805 (1990).

ITT contends that reading the statute to vest the Director with discretion to act even if a dispute is not filed within the 15-day limit renders the limitation period meaningless. That conclusion need not follow. The various provisions of WAC 296-18A-470 and RCW 51.32.095(6) can be reconciled by construing the statute in the following manner: Review by the Director is assured if brought within the 15-day period, although the decision to investigate or not ultimately rests with the Director. After the 15-day period, review may occur by two different means. One, the Director may exercise discretion to review a case on his or her sole initiative.[3] RCW 51.32.095(6);

---

[3]That is not to say that the statute empowers the Director to abuse his or her discretion. To that extent, the Director's discretion is limited. *See, e.g., State v. Ford*, 110 Wn.2d 827, 755 P.2d 806 (1988) (courts have inherent power to review administrative action to assure that it is not arbitrary and capricious).

*see* WAC 296-18A-470(1), (2). Alternately, a case may be heard after the 15-day period has elapsed upon a request by the claimant to the Department showing cause why the 15-day limit was exceeded. *See* second sentence of WAC 296-18A-470(1). In these two instances, the claimant cannot be *assured* the claim will be reviewed by the Director, but the Director may exercise discretion pursuant to the Department's reservation of the power to extend the time limit in WAC 296-18A-470(1) and the broad grant of authority in RCW 51.32.095(6).

## II
### ABUSE OF AGENCY DISCRETION

ITT also maintains the Department's request for additional information was arbitrary and capricious because the Department possessed the necessary information to determine Dalman's employability. This assertion cannot be verified because the record does not conclusively establish what evidence was before the Department when it made its decision.

▆ Agency action is arbitrary and capricious if it is willful and unreasoning, and taken without regard to the attending facts or circumstances. This court has explained that "[w]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." *Kendall v. Douglas, Grant, Lincoln & Okanogan Cys. Pub. Hosp. Dist. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991) (quoting *Abbenhaus v. Yakima*, 89 Wn.2d 855, 858-59, 576 P.2d 888 (1978) (citing *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 511 P.2d 52 (1973))).

None of the documents in the Department's file at the time it approved the initial employability decision are contained in the record, with the exception of the cover sheet of the "Eligibility Statement Form." Exhibit 2, attachment 1. The page contains no substantive information concerning Dalman's condition other than the bare assertion he is "empl[oyable] as a security guard or watchman".

ITT contends the testimony of Berg, the vocational counselor who evaluated Dalman, establishes all the information

the Department would have needed to conclude Dalman was employable. The record does contain this testimony. Berg testified that Dalman's physician stated Dalman could sit 2 hours in an 8-hour day, and stand or walk intermittently the other 6 hours. Testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 21-22. Berg also testified that a job was available that allowed complete freedom to change positions at will, to sit and stand or walk intermittently, and to lift only 5 or 10 pounds at most. Testimony of John Berg before the administrative law judge (Sept. 30, 1988), at 39.

Berg's testimony, then, supports ITT's assertion about the adequacy of the Department's information concerning Dalman's employability. As the Court of Appeals noted, however, the record does not contain the documents in the Department's possession when it made its decision to remand for further findings. It is thus impossible to determine whether the record before the agency contained conflicting evidence that might have justified a decision to more carefully examine Dalman's physical limitations. The rehabilitation reviewer's decision to request further information suggests that either the record was insufficient, or contained conflicting evidence. He stated in his letter:

> The problem is that it is unclear whether Mr. Dalman has the needed physical ability to do these jobs. The latest physical capacities evaluation dated December 12, 1986 presented physical limitations which do not appear compatible with the physical demands of security guard or watchman.

Letter of Mark Holm, rehabilitation reviewer to ITT's claim representative; exhibit 2, attachment 10.

The physical capacities evaluation to which the letter refers is not included in the record. Given the paucity of the record, it is impossible to conclude the Department abused its discretion in remanding for more particularized findings.

The Court of Appeals is affirmed.

BRACHTENBACH, DOLLIVER, SMITH, and JOHNSON, JJ., concur.

DURHAM, J. (dissenting) — The Department of Labor and Industries (Department) has established a dispute resolution process for contesting employability determinations. WAC 296-18A-470. To initiate this process, an injured worker *must* dispute the Department's determination in writing within 15 days of receipt of the determination, and *must* include the reasons why the determination is disputed. WAC 296-18A-470(2). The Department also enacted a fail-safe provision, which allows it to extend these time limits "when good cause is shown". *WAC* 296-18A-470(1). The effect of the majority's decision is to render the Department's own rules a nullity. Thus, I respectfully dissent.

Marvin Dalman failed to file a timely dispute.[4] Moreover, as the parties concede, there was no showing of "good cause". Despite this, the majority abrogates normal notice-and-comment rulemaking and rewrites the Department's own rule to eliminate the "good cause" requirement. The majority's reading also implies that an agency may alter its own rules merely through violation or disregard.

The majority contends that the legislative intent here is to grant the Department unfettered discretion to consider claims at any time. The specific legislative pronouncement the majority depends upon reads:

> The director may, in his or her sole discretion and upon his or her own initiative or at any time that a dispute arises under this section, promptly make such inquiries as circumstances require and take such other action as he or she considers will properly determine the matter and protect the rights of the parties.

RCW 51.32.095(6). Admittedly, this is a broad grant of discretionary authority to the Department, and were this the sole basis for deciding the dispute before us, I would agree with the majority that the Department has the authority to consider disputes at any time.

---

[4]Dalman had to dispute the Department's determination within 15 calendar days of the date of receipt of the Department's letter. Dalman's attorney received the letter on January 16, 1987, which made the deadline for filing a dispute January 31, 1987. As this was a Saturday, the deadline was extended to February 2, pursuant to WAC 263-12-175. It is uncontested that Dalman did not file his dispute until February 5, 1987.

However, this grant of authority has been bounded by the Department's own rules. The Department has seen fit to limit its discretion by enacting procedural rules to govern such disputes. *See, e.g., Wilson v. Nord,* 23 Wn. App. 366, 373, 597 P.2d 914 (agency's discretion limited by constitution, statutes and regulations), *review denied,* 92 Wn.2d 1026 (1979). The majority's reliance on the enabling statute is misplaced. The dispute here is governed by specific and unambiguous rules promulgated by the agency itself. Dalman did not contest the Department's determination within the required 15 days, nor did he make any good cause showing to excuse his delay.[5] WAC 296-18A-470. Moreover, the Department itself did not make any finding that good cause existed. Rather, the Department cavalierly stated that the dispute "was filed in a timely manner." Certified Appeal Board Record, at 91. There is no basis in either fact or law for this belief.

The majority's explanation of how WAC 296-18A-470 and RCW 51.32.095(6) can be "reconciled" is also nonsensical. The majority reads the rule and the statute to mean that:

> Review by the Director is assured if brought within the 15-day period, although the decision to investigate or not ultimately rests with the Director. After the 15-day period, review may occur by two different means. One, the Director may exercise discretion to review a case on his or her sole initiative. RCW 51.32.095(6); *see* WAC 296-18A-470(1), (2). Alternately, a case may be heard after the 15-day period has elapsed upon a request by the claimant to the Department showing cause why the 15-day limit was exceeded.

(Footnote omitted.) Majority, at 808-09. This explanation fails to recognize that the "good cause" requirement is still eliminated from the rule. Since the Department can exercise unlimited discretion upon its own initiative to review a late-filed case, there is no reason the Department would ever rely upon good cause being shown. The better, and more straightforward, reading of the statute is that the good cause require-

---

[5] Nor can he plead mere ignorance of the Department's own rules, as the 15-day time limit was clearly noted on the employability determination sent to him by the Department.

ment of WAC 296-18A-470 provides a necessary limitation on the broad language of RCW 51.32.095(6). The Department has authority to review a timely filed complaint, but after the running of the 15-day period, review will only be undertaken if the aggrieved party makes a showing of good cause.

Finally, the majority's reading of these regulations goes against the spirit, if not the very letter, of our recently published decision in *Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 852 P.2d 288 (1993). In that case, The Erection Company timely notified the Department of its intent to appeal a citation and penalty. The Department reassumed jurisdiction over the dispute, but failed to complete its redetermination within 30 days, as mandated by RCW 49.17.140(3). This court found that use of the word "shall" in the statute created a mandatory, jurisdictional requirement. *Erection Co.*, at 519. Similarly, in this case the rule states that:

> The director *must* receive a dispute of the employability determination or formal plan, in writing, within fifteen calendar days from receipt of notification to the worker or employer. The dispute *must* include reasons for the request.

(Italics mine.) WAC 296-18A-470(2). Although a legislative pronouncement was at issue in *Erection Co.*, there is no principled reason to treat an administrative rule more leniently. Indeed, agencies make their own rules, and can easily amend such rules through normal notice-and-comment rulemaking if they find them to be too unwieldy. *Cf. State ex rel. Carpenter v. Everett Bd. of Adj.*, 7 Wn. App. 930, 936-37, 503 P.2d 1141 (1972) (rules cannot be rescinded or changed merely by their violation). There is no reason for this court to supersede the rule-making process.

The Department's rules are clear and unambiguous, and should be interpreted as such. In order for the Department to accept a late-filed dispute, good cause must be shown. Such a reading fulfills the Department's own goal of "avoid[ing] delay in the vocational rehabilitation process and . . . allow[ing] resolution of disputes . . .." WAC 296-18A-470(1).

814

Permitting the uncontrolled late filing of disputes delays the rehabilitation process and makes needlessly uncertain the Department's own decisions. Under the rules as they are written, employers and employees are able to begin the rehabilitation process soon after the Department's determination, secure in the knowledge that, except under stated circumstances, the Department's determination is final if no dispute is filed. Disputes that are filed, being promptly raised, can be resolved while the case is still fresh. Under the majority's reading, employers and employees will no longer be able to depend on the Department's determinations, as they can be disputed long after they are made, indeed even after the rehabilitation process itself has begun.[6] All that the petitioner asks is that the Department be made to follow its own rules. I see no reason to deny that request.

ANDERSEN, C.J., and GUY and MADSEN, JJ., concur with DURHAM, J.

---

[6]The majority's interpretation will also impact other regulatory deadlines in the workers' compensation system. *See, e.g.,* WAC 296-18A-445 (submission deadlines for self-insured reports); WAC 296-18A-460 (48 hours' advance notice for audits); WAC 296-18A-500 (submission and review deadlines for rehabilitation plans, explicitly incorporating WAC 296-18A-470). The implication of the majority is that the Department can arbitrarily ignore such regulatory deadlines by depending on its broad grant of statutory power.