IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| COURTNEY COOPER,<br><br>                    Appellant,<br><br>          v.<br><br>LAURA LOWERY,<br><br>                    Respondent,<br><br>THE CITY OF SEATTLE, a<br>Washington municipal corporation,<br><br>                    Defendant. | No. 81029-4-I<br><br><br>ORDER DENYING MOTION FOR<br>RECONSIDERATION, WITHDRAWING<br>OPINION, AND SUBSTITUTING<br>OPINION |

Respondent Laura Lowery moved for reconsideration of the opinion filed on May 3, 2021. Petitioner Courtney Cooper responded. A majority of the panel has considered the motion pursuant to RAP 12.4 and has determined that the motion should be denied. However, a majority of the panel has determined that the opinion should be withdrawn and a substitute opinion filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on May 3, 2021, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____
Chun, J.

_____        _____
Coburn, J.                                         Andrus, A.C.J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COURTNEY COOPER,<br><br>                         Appellant,<br>         v.<br><br>LAURA LOWERY,<br><br>                         Respondent,<br><br>THE CITY OF SEATTLE, a Washington municipal corporation,<br><br>                         Defendant. | No.  81029-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Courtney Cooper, a real estate broker, bought a share representing a floating home moorage slip (Slip) from Molly Brackett.  Laura Lowery owns the floating home moored to the Slip.  Cooper sought to increase Lowery's monthly moorage rent.  Lowery petitioned for review before a hearing examiner under Seattle Municipal Code (SMC) 7.20.080—a provision of the Seattle floating home ordinance—claiming that the rent increase was unreasonable and that the transaction between Cooper and Brackett did not constitute a genuine change in control over the Slip.  The hearing examiner agreed with Lowery.  The superior court affirmed.  We reverse and dismiss for lack of subject matter jurisdiction.

Citations and pin cites are based on the Westlaw online version of the cited material.

I. <u>BACKGROUND</u>

Molly Brackett owned a dock composed of several floating-home moorage slips, known as the Brackett Dock. Brackett formed the Brackett Dock Association—a corporation providing cooperative ownership of the Brackett Dock—and owned all shares in the association. Ownership of a share in the corporation corresponds to (1) the right to moor a floating home to the associated slip or to collect rent from a floating home moored in that slip and (2) the right to an assigned parking space or to collect rent on it. Brackett sold all but one of the floating-home slips to the respective floating-home owners moored to each slip. This case concerns the remaining slip, where Lowery moors her floating home. She rents this floating home to others.

In May 2018, Cooper bought the share representing the Slip from Brackett who financed the purchase. Cooper notified Lowery of the change in ownership and began making monthly payments to Brackett. At the time, Lowery was paying $750 per month in moorage rent for the Slip.

In July 2018, Cooper notified Lowery that Cooper was increasing rent to $2,345. Lowery petitioned for review before a Seattle Hearing Examiner under SMC 7.20.080[1] to contest the rent increase. She said the rent was unreasonable

---

[1] Chapter 7.20 SMC codifies the Seattle floating home ordinance. Under SMC 7.20.020, the overall purpose is to address arbitrary actions and unreasonable rent increases affecting floating-home owners while preserving the fundamental attributes of property ownership for moorage owners. SMC 7.20.090 provides for limited rent increases not subject to review by a hearing examiner. SMC 7.20.080 provides for review by a hearing examiner if a moorage owner tries to impose rent over an amount permitted by SMC 7.20.090. SMC 7.20.080 sets forth the process for review and the factors the hearing examiner must consider in assessing the contested rent increase.

and that the transaction between Brackett and Cooper did not lead to a genuine change in control.

Cooper did not dispute subject matter jurisdiction. The hearing examiner determined she had jurisdiction to hear the case under SMC 7.20.080 and did not provide reasoning. She concluded that Cooper failed to bear her burden of proving the sale led to a "genuine change in control of the moorage" as required by SMC 7.20.080(D)(2) and thus could not raise rent to $2,345.

Cooper appealed to King County Superior Court. The court affirmed the hearing examiner's decision.

## II. ANALYSIS

A. Subject Matter Jurisdiction

Cooper says that the hearing examiner lacked subject matter jurisdiction[2] to decide the case. Cooper contends that SMC 7.20.080—which provides for review before the hearing examiner—applies to only "moorage owners" and that she is not a "moorage owner" as defined by SMC 7.20.030. Lowery concedes

---

And under SMC 7.20.080(D)(2), if a sale is used to justify a new cost basis for a rent increase, then the respondent must prove a genuine change in control of the property.

[2] Cooper concedes that she did not raise this jurisdictional argument before the hearing examiner. But she contends that she may raise it for the first time on appeal under RAP 2.5(a)(1). We agree. While that rule states that an appellant can raise for the first time on appeal the issue of "lack of trial court jurisdiction," Washington courts have interpreted the language more broadly to include administrative tribunals. See, e.g., Goldsmith v. State, Dep't of Soc. & Health Servs., 169 Wn. App. 573, 580, 280 P.3d 1173 (2012) ("A tribunal's lack of subject matter jurisdiction may be raised at any time in a legal proceeding. . . . Without subject matter jurisdiction, a court or administrative tribunal can do nothing other than dismiss") (internal citation omitted); Inland Foundry Co. v. Spokane County Air Pollution Control Auth., 98 Wn. App. 121, 123, 989 P.2d 102 (1999).

that Cooper is not a moorage owner but says the hearing examiner still had jurisdiction.[3] We conclude that the hearing examiner lacked subject matter jurisdiction to review the challenged rent increase.

We review de novo whether a tribunal has subject matter jurisdiction. In re Marriage of McDermott, 175 Wn. App. 467, 479, 307 P.3d 717 (2013); see also Singletary v. Manor Healthcare Corp., 166 Wn. App. 774, 781, 271 P.3d 356 (2012) (applying de novo review to whether an administrative agency lacked subject matter jurisdiction).

"'A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate.'" Landon v. Home Depot, 191 Wn. App. 635, 640, 365 P.3d 752 (2015) (quoting Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 539, 886 P.2d 189 (1994)). "A lack of subject matter jurisdiction implies that an agency has no authority to decide the claim at all, let alone order a particular kind of relief." Yow v. Dep't of Health Unlicensed Practice Program, 147 Wn. App. 807, 815, 199 P.3d 417 (2008). "The type of controversy over which an agency or tribunal has subject matter jurisdiction refers to the general category of controversies it has authority to

---

[3] Lowery says that a mechanism in SMC 7.20.110 that sets rent upon re-occupation by a floating-home owner of a previously rented floating home "supports [her] construction" of SMC 7.20.080. Lowery interprets SMC 7.20.110 as setting rent based on comparably situated floating homes at the same dock if she chose to re-occupy her floating home. Lowery appears to say because this provision is so "extraordinary" in setting rent without regard for market conditions the ordinance should be interpreted broadly. Given that the purpose of this argument is unclear, we decline to reach the issue. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument."). And the argument does not appear to support the existence of subject matter jurisdiction here.

decide and is distinct from the facts of any specific case." Singletary, 166 Wn. App. at 782.

According to the City of Seattle Hearing Examiner Rules of Practice and Procedure 2.03 (2012), "[t]he Hearing Examiner has jurisdiction to hear and decide appeals and other contested cases . . . only as authorized by law." Thus, we determine whether the hearing examiner's review of this case was authorized by law.

We interpret local ordinances as we do statutes. Griffin v. Thurston County, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). A court's duty in interpreting a statute is to "'discern and implement'" the legislature's intent. Ellensburg Cement Prod., Inc. v. Kittitas County, 179 Wn.2d 737, 743, 317 P.3d 1037 (2014) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." State ex rel. Citizens Against Tolls v. Murphy, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). When determining plain meaning, courts examine the "statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." Id. Courts consider "'the context of the regulatory and statutory scheme as a whole.'" Dep't of Transp. v. City of Seattle, 192 Wn. App. 824, 838, 368 P.3d 251 (2016) (quoting ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 807, 863 P.2d 64 (1993)). "When interpreting a statute, 'we must not add words where the legislature has chosen not to include them.'" Id. (internal

5

quotation marks omitted) (quoting Lake v. Woodcreek Homeowners Ass'n, 169

Wn.2d 516, 526, 243 P.3d 1283 (2010)).

> SMC 7.20.030 sets forth these definitions:
>
> C. "Floating home moorage," or "moorage" means a waterfront facility for the moorage of one (1) or more floating homes, and the land and water premises on which such facility is located.
>
> D. "Floating home moorage owner," or "moorage owner" means any person or group who owns in fee or who has a leasehold interest in an *entire* floating home moorage facility.
>
> . . .
>
> G. "Moorage site" means a part of a floating home moorage, located over water, and designed to accommodate one (1) floating home.

(Emphasis added.) Thus, a "moorage owner" has an ownership or leasehold

interest in an entire floating home moorage facility rather than an individual slip.

SMC 7.20.080 provides for review of a rent increase if a majority of those

affected by the rent increase—"excluding the moorage owner"—believe the rent

is unreasonable. SMC 7.20.080 uses the term "moorage owner" throughout and

does not reference those who own a share representing an individual slip.[4] The

purpose of the ordinance

---

[4] SMC 7.20.080(A) ("A *moorage owner* seeking a moorage fee increase shall give the floating home owners affected thereby a written notice."); (C) ("The *moorage owner* shall . . . file with the Hearing Examiner and serve upon the petitioning floating home moorage site lessees or their representative, a memorandum and any necessary affidavits or sworn statements in support of the proposed increase."); (D)(1) ("The Hearing Examiner shall find whether [a rent increase] is necessary to assure a fair and reasonable return to the *moorage owner*."); (D)(2) ("The Hearing Examiner may rely on this [sale price] factor as supporting a rent increase or any part thereof only if the *moorage owner* demonstrates at hearing that the sale or other transaction relied upon resulted in a genuine change in control of the moorage."); (E) ("No contested moorage fee increase shall take effect until approved . . . provided that the *moorage owner* or operator may recover retroactively") (emphasis added).

is to prevent harm to the public by protecting the stability, viability, and fiscal integrity of Seattle's unique floating home communities by preventing the eviction of floating homes from their moorages through arbitrary actions and unreasonable rent increases, and by discouraging the eviction and destruction of valuable and habitable floating homes by enhancing opportunities for floating home owners to purchase their moorages, while preserving to moorage owners the fundamental attributes of ownership.

SMC 7.20.020.

The hearing examiner lacked jurisdiction to hear this case because SMC 7.20.080 does not authorize review of Lowery's petition. As Cooper notes, she is not a "moorage owner" because she owns only the Slip. The ordinance does not cover rent increases by those who own a share representing only an individual slip.

Lowery concedes that Cooper is not a moorage owner but says that, as a person seeking to raise Lowery's rent, Cooper is still subject to SMC 7.20.080.[5] Lowery contends that the ordinance's purpose is to protect people like her. Yet by its plain terms, SMC 7.20.080 does not authorize review of rent increases by those who own a share representing an individual slip. See Murphy, 151 Wn.2d at 242 ("[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."). While SMC 7.20.080 refers to moorage owners, it makes no mention of those who own a share representing an individual slip. See Dep't of Transp., 192 Wn. App. at 838

---

[5] While Lowery concedes that Cooper is not a moorage owner under the definition of SMC 7.20.030, she says that as a result, Cooper cannot invoke SMC 7.20.080(D)(2). That provision allows a moorage owner to rely on a sale to justify a new cost basis for rent if the owner proves a genuine change in control. Because we agree with Cooper that SMC 7.20.080 does not apply to her, we do not reach this issue, which does not relate to the subject matter jurisdiction analysis.

("When interpreting a statute, 'we must not add words where the legislature has chosen not to include them.'" (internal quotation marks omitted) (quoting Lake, 169 Wn.2d at 526)).  SMC 7.20.080 does not provide the hearing examiner with authority to hear this petition.

We reverse and dismiss.

Chun, J.

WE CONCUR:

Coburn, J.          Andrus, A.C.J.

8