**WISCONSIN PUBLIC SERVICE CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**CONSOLIDATED WATER POWER COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 93–1787, 93–1788.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1994.

Decided Aug. 19, 1994.

Michael Fischer (argued), Douglas B. Clark, F. Maio, Foley & Lardner, Milwaukee, WI, for petitioner.

Jerome M. Fiet, Eric Christensen (argued), F.E.R.C., Washington, DC, for respondent.

Jack J. Crowe, Winston & Strawn, Chicago, IL, William J. Madden, John A. Whittaker, IV, Winston & Strawn, Washington, DC, Henri D. Bartholomot, Edison Elec. Institute, Washington, DC, for amicus curiae Edison Elec. Institute.

J. Carol Williams, Peter R. Steenland, Jr., Dept. of Justice, Land & Natural Resources

Div., Washington, DC, Mark A. Anderson, Dept. of the Interior, Office of the Field Sol., Twin Cities, MN, Niel Moeller, Mark A. Eames, National Oceanic and Atmospheric Admin., Office of General Counsel, Seattle, WA, Jane Hannuksela, National Oceanic and Atmospheric Admin., Office of General Counsel, Silver Spring, MD, for amicus curiae U.S.

James E. Doyle, Atty. Gen., Philip Peterson, Wisconsin Dept. of Justice, Madison, WI, for amicus curiae State of Wis.

Before BAUER and CUDAHY, Circuit Judges, and GRANT, District Judge.[*]

CUDAHY, Circuit Judge.

These consolidated cases involve the relicensing of two water power projects on the Wisconsin River to, respectively, Wisconsin Public Service Corporation (WPS) and Consolidated Water Power Company (Consolidated). In the respective licenses issued in the two cases the Federal Energy Regulatory Commission (the Commission or FERC) included reopener clauses requiring the licensees to construct, operate and maintain such fishways as might in the future be prescribed by the Secretary of the Interior pursuant to Section 18 of the Federal Power Act, 16 U.S.C. § 811. A fishway, presumably, is a means for migratory fish to follow the stream around the dam. The licensees petition us to review the Board's decision, challenging the legality and propriety of these fishway conditions. We deny the petitions for review.

I

Both of these water power projects on the Wisconsin River in Wisconsin concern the relicensing of projects that were constructed and were first licensed by the Commission many years ago. The Otter Rapids Hydro Project in Vilas and Oneida counties (for which WPS is being relicensed) was originally built between 1906 and 1907 and was first licensed to WPS under the Federal Power Act (FPA) in 1950. The project was relicensed in 1975 and this license expired in

1990. The DuBay Project between Wausau and Stevens Point (for which Consolidated is being relicensed) was constructed in 1941 and 1942 and was first licensed to Consolidated in 1952. The original license expired in 1991.

As part of the relicensing process for both projects, comments were submitted by the Department of the Interior. In the case of Otter Rapids, Interior indicated that it was studying the "system-wide effects of continued operation" of eight Wisconsin River hydroelectric projects whose licenses would expire by the end of 1993. Interior stated that it would probably recommend "project-specific and basin-wide measures to protect and enhance fish and wildlife resources in the basin" and requested FERC to "include a provision for modifying operation of this project to permit implementation of comprehensive measures to protect and enhance fish and wildlife resources." Interior noted that, although "upstream and downstream passage of fish past the Otter Rapids Project" was not a current "management objective" for the Wisconsin River, those management objectives might change, necessitating fish passage facilities at Otter Rapids. Interior further said that "the Department reserves the authority to prescribe the construction, operation, and maintenance of fishways pursuant to Section 18 of the Federal Power Act." Interior therefore requested that "such reservation be noted in any license issued for the project."

With respect to the DuBay Project, Interior filed a letter with the Commission that, in essentially the same terms as the letter filed in connection with the Otter Rapids Project, noted the importance of the Wisconsin River for fish, wildlife and recreation. Interior requested the Commission to reserve its authority under Section 18 to prescribe fishways in any license issued to Consolidated. In connection with the issuance of a new license to Consolidated for the DuBay Project the Director of the Commission's Office of Hydropower Licensing (the Director)[1] noted that the relevant state wildlife agency

---

[*] Honorable Robert A. Grant of the Northern District of Indiana is sitting by designation.

[1]. The Commission's licensing authority was delegated to the Director in 18 C.F.R. § 375.-314(a)(1) (1993).

"is interested in reestablishing lake sturgeon and other species whose historical range is (and/or suitable habitat is available) in the Upper Wisconsin River" and that "[s]turgeon and walleye are capable of traveling long distances and passing over dams if appropriate fish passage is provided...."

The licenses issued to WPS and to Consolidated both included the following reopener condition (Art. 404 of both licenses):

Authority is reserved to the Commission to require the licensee to construct, operate, and maintain, or provide for the construction, operation, and maintenance of such fishways as may be prescribed by the Secretary of the Interior pursuant to Section 18 of the Federal Power Act.[2]

Both WPS and Consolidated unsuccessfully appealed the inclusion of these fishways conditions to the full Commission, which rejected the appeals but with Commissioner Trabandt and Terzic[3] dissenting with respect to the fishways reservations. Both licensees now appeal.

## II

The Commission contends that the inclusion of this provision in these licenses is pursuant to a construction of the Federal Power Act offered in *Lynchburg Hydro Associates,* 39 FERC ¶ 61,079, 61,218 (1987). In *Lynchburg,* the Commission construed the Act to empower it to include as a condition of any original license it issues such fishways as the Secretaries of the Interior and Commerce prescribed for the project. The Commission also held that it was empowered to include in any original license a so-called "reopener" clause that would allow the Secretaries (of Interior or Commerce) to prescribe fishways if and when they are needed in the future. The Commission observed that it would be appropriate to include such a clause in a license where it was not possible to prescribe fishways at the time of the issuance of the license.

The history of Section 18 of the Federal Power Act may be traced to the General Dam Act of 1906, ch. 3508, 34 Stat. 386 (1906). Section 3 of the General Dam Act provided that "[t]he persons owning or operating any such dam shall maintain, at their own expense, such lights and other signals thereon and *such fishways as the Secretary of Commerce and Labor shall prescribe.*" *Id.* (emphasis supplied). More or less contemporaneous testimony before Congress indicated that the General Dam Act was viewed as allowing Congress, when it authorized construction of a dam, to reserve federal authority so that if a river at some future point were open to navigation, the federal government would be empowered to require the dam owner to install locks and other navigation devices at that time. *See II Hearings on H.R. 1544 Before the House Committee on Interstate and Foreign Commerce,* 60th Cong., 2d Sess., at 111 (1908) (testimony of General Alexander MacKenzie, the Chief of the Army Corps of Engineers).

The fishways language of the General Dam Act was incorporated into Section 18 of the Federal Water Power Act of 1920 essentially intact. Ch. 285, 41 Stat. 1072 (1920). Section 18 took its final form with the passage of the Federal Power Act in 1935, when the fishways provision was changed to require that the Commission "shall" require licensees to build such fishways as prescribed by the Secretaries of Interior or Commerce. In 1986, Congress again amended the FPA through enactment of the Electric Consumers Protection Act (ECPA), Pub.L. No. 99–495, 100 Stat. 1243 (1986). Section 18 was left intact and the ECPA Conference Committee explained "The amendment does not change ... the present duties of FERC under Sections 4, 10(a), and 18 of the Federal Power Act, nor diminish the importance of those provisions in providing fish and wildlife benefits both downstream and upstream of a project." H.R.Conf.Rep. No. 99–934, 99th Cong., 2d Sess. 23 (1986), *reprinted in* 1986

---

**2.** Section 18 of the FPA, 16 U.S.C. § 811, provides in pertinent part that the "Commission shall require the construction, maintenance and operation by a licensee at its own expense of ... such fishways as may be prescribed by the Secre-

tary of the Interior or the Secretary of Commerce, as appropriate."

**3.** Commissioner Terzic is a former member of the Wisconsin Public Service Commission.

U.S.C.C.A.N. 2496, 2539 (emphasis added). Congress apparently endorsed the Commission's practice of including reopener clauses in its licenses reserving authority to address future contingencies:

> The Committee believes that the Commission should have authority to ensure that licenses reflect current information concerning the need to protect fish and wildlife. The legislation does not change existing law, including case law, governing FERC authority to modify licenses during their term."

H.R.Rep. No. 99–507 at 32, 1986 U.S.C.C.A.N. at 2519.

With respect to the Energy Policy Act of 1992, Pub.L. No. 102–486, 106 Stat. 2776 (1992), Congress explicitly considered and rejected amendments to Section 18 that would have limited Interior's authority to prescribe fishways. The Commission asked for authority to consider and balance Interior's recommendations for fishways with other values, but this approach was rejected. *See National Energy Strategy: Hearings on H.R. 1301 et al. Before the Subcom. on Energy & Power of the House Comm. on Energy & Commerce,* 102nd Cong., 1st Sess. pt. 6 at 516–17 (1991).

### III

▮▮▮ The challenges brought to the fishway reservations ordered by the Commission are not constitutional but turn primarily upon an appropriate interpretation of the Federal Power Act. It is, of course, fundamental that in such a case of statutory interpretation we must give primary effect to the plainly expressed intent of Congress. *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). To the extent, however, that the statute is silent or ambiguous, the Commission's interpretation is entitled to "great deference." *Illinois EPA v. U.S. EPA,* 947 F.2d 283, 289–90 (7th Cir.1991). In addition, Section 313(b) of the FPA provides, "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 16 U.S.C. Section 825*l* (b). Essentially our review is to determine whether the Commis-

sion "abused or exceeded its authority," whether its action is supported by substantial evidence and whether it has given "reasoned consideration" to and adequately articulated the relevant factors. *Northern Indiana Public Service Co. v. FERC,* 782 F.2d 730, 739–40 (7th Cir.1986).

### A

▮▮ A fundamental objection of the petitioners to the Commission's reservation of fishways under the authority of Section 18 is that this invites a unilateral determination by another agency, the Department of the Interior, based upon its view of some future conservation or wildlife need, which is not balanced against the allegedly delicate economics of these water power projects. For example, the Commission staff estimated that the cost of energy from the Otter Rapids Project would be only two-tenths of a mill ($.0002) per kilowatt hour (or about $1,000 a year) less than alternative electric energy available in the region. Therefore, there would be no reasonable basis upon which the putative project licensee could estimate the future impact of a requirement to install fishways on the economics of the project. Hence, there was no rational basis on which the putative licensee could determine whether to accept the license with a fishway reservation.

This is certainly not an inconsequential issue. But the record does not disclose that the allegedly marginal economics of the Otter Rapids Dam are replicated elsewhere. The DuBay Project, for example, apparently has a much more substantial margin of profitability. In any event there can be no guarantee of profitability of water power projects under the Federal Power Act; profitability is at risk from a number of variable factors, and values other than profitability require appropriate consideration.

### B

Section 6 of the FPA provides that the terms and conditions of a license may not be altered without the licensee's consent. The petitioners here contend that the Commission's reservation with respect to fishways to

be exercised (or not) at some unspecified date in the future and to provide for the installation of a fishway of presently unknown design, cost and potential impact on other aspects of the project cannot be reconciled with Section 6. They claim that the unqualified reservation of Section 18 authority provides the licensee with no reasonable or rational basis for evaluating the potential effect of a prescription. But this argument was made and rejected in *State of California v. FPC*, 345 F.2d 917 (9th Cir.), *cert. denied*, 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). In that case the Commission, acting under Section 10 of the Act, included a reopener clause in its license allowing it to reevaluate after twenty years the minimum flow requirements that it had imposed on the licensee. In that case, the licensee made the argument, such as the one made here, that the reservation violated Section 6. The Ninth Circuit concluded that "the licensee cannot possibly speak with definiteness and precision concerning the matter." More recently in *Pacific Gas & Electric Co. v. FERC*, 720 F.2d 78 (D.C.Cir.1983), the D.C. Circuit upheld the Commission's determination that it could allow an existing dam to be inundated by a new dam based on a provision in the license for the original dam providing that "[i]n order that this project shall not interfere with any project ... which may hereafter be developed ... the Commission expressly reserved the right at any time" to grant a new license that would allow the original dam to be inundated. 720 F.2d at 91. *See also U.S. Dept. of Interior v. FERC*, 952 F.2d 538 (D.C.Cir.1992).

The petitioners attempt to distinguish *California v. FPC* on a number of grounds. First, they point out that the Commission in that case was reserving its own authority and discretion as opposed to discretion vested in the Secretary of the Interior. But Congress, in its concern for environmental and conservation values, specifically elected to vest this authority in the Secretary of the Interior,

perhaps in the belief that he would give the values in question a stronger priority than FERC, which might be more interested in energy economics. Second, petitioners claim that the reservation in *California v. FPC* was intended to address reasonably foreseeable circumstances. But here the reservation was intended to address circumstances, perhaps less foreseeable but nonetheless specifically contemplated by Congress. Third, they point out that in *California v. FPC* future action would be tested for consistency with the FPA, including its effect on project economics.[4] This may be the case but again Congress addressed the situation here specifically with the provisions contained in Section 18. Fourth, the petitioners argue that in *California v. FPC*, as opposed to the present case, there would ultimately be a showing based on substantial evidence that the action was necessary and desirable. In the case before us, the Commission has given strong assurances to the petitioners that there would be a hearing at the time that Interior requested fishway installation. But, in any event, the need for fishways, here under Section 18, was a matter delegated to the Secretary of the Interior by the Congress. Fifth, the petitioners argue that in *California v. FPC* the licensee retained a right to challenge the validity of the action taken by the Commission. Here the petitioners can certainly raise the issue whether an ordered fishway accords with the sort of improvement contemplated by Congress.

The heart of the petitioners' argument is essentially that it is unfair to require them to decide whether or not to proceed with their water power projects when this license provision prevents them from knowing, before they undertake the activity, what their costs will be and therefore whether the activity will be commercially viable. But they ground their argument entirely on the statute; they do not raise a due process objection, and we can see nothing in the statutory scheme to distinguish this case from *Califor-*

---

**4.** In *California v. FPC*, the Commission, acting under Section 10 of the Federal Power Act, 16 U.S.C. § 803, required two irrigation districts, for the first twenty years of a fifty-year license, to maintain a specified stream flow in order to facilitate fish runs, and retained the authority—

after the first 20 years—to determine the minimum stream necessary. Under Section 10, the Commission, presumably balancing relevant factors including project economics, makes its own determination of the need for action.

*nia v. FPC.* The FPA cannot be read to require the Commission to protect the economic viability of all hydroelectric projects. Moreover, Section 18 specifically, and by its very terms provides for a reservation condition such as the one applied in this case. Therefore, we believe that *California v. FPC* and cases which follow it are controlling.

In addition, we see nothing to distinguish relicensing situations from the grant of original licenses with respect to the application of a Section 18 reservation. Where Congress intended provisions of the Act to apply only to original licenses, the statute clearly so provides. As the Ninth Circuit observed in *California v. FPC,* the construction of the Act which the petitioners are arguing for here "is impractical of application." 345 F.2d at 924. The Commission should not be left with the untenable choice of either requiring petitioners to construct potentially needless fishways at the time of licensing or effectively eliminating the possibility of restoring migratory fish runs to the Wisconsin River. Therefore, the reservation of authority to impose a future requirement seems an appropriate measure for the protection of the public interest.

As we have noted, we think that the potential impact of the cost of the fishway on the economics of a relatively marginal power generating project may be a significant issue. However, there is no indication from this record that this is a generally applicable problem and it is certainly one that Congress can deal with within rather broad limits. In addition, we would emphasize that the Commission has committed itself to conduct hearings at such future time as fishways may have to be ordered. What precisely will be the scope of these hearings we cannot address at this point. However, we emphasize that our approval of the Commission's construction of the statute here is significantly dependent upon its commitment to conduct such hearings.

### C

Petitioners also challenge the Commission's interpretation of Section 18 on the ground that it conflicts with the requirement for "reasonable" terms of licenses contained in Section 15. Section 15 provides that a new license be issued to an original licensee at the end of the original license term on "reasonable" terms. Petitioners argue that the possibility that the Commission's prescription of a fishway may make the project uneconomic at some future date renders the reservation an unreasonable term. Petitioners emphasize in this branch of their argument that the case for unreasonableness rests in considerable measure with the Commission's interpretation that it may not question Interior's determination of need nor may it weigh the need for a fishway against economic viability. If however, there is unreasonableness in this provision, it is the unreasonableness of Congress in enacting Section 18 rather than that of the Commission in interpreting the section. The purported "unreasonableness" springs from congressional emphasis on the priority to be given conservation considerations. There are a variety of unknown future contingencies under which the petitioners accept a license. One of the more notable of these presumably is the level of flow in the Wisconsin River in future years. By adding to the natural contingencies which must attach to any project envisioning operation over a long period of years a requirement for the construction of a fishway we do not believe that either Congress or the Commission has acted unreasonably. Reasonableness is a term of notable flexibility in both the legislative and the administrative lexicon and we do not believe that the present requirements exceed the usual and normal limits of the term.

### D

The petitioners also challenge the Commission's construction of the FPA as being in conflict with certain requirements of the Administrative Procedure Act. They claim that there is no evidence in the record that at any time in the future a fishway will be necessary in connection with either of the two projects. We think that Congress in enacting Section 18, or its equivalent over the years has already made a finding, in effect, that a fishway may become necessary with respect to any water power project affecting fish migration in a river. Congress has delegated to

the Secretary of the Interior the authority to make a determination when and if a fishway may become necessary. We can hardly expect the Commission at the present time to make a finding which would be meaningful with respect to an uncertain future event.

Also the petitioners complain that the reservation of Section 18 prescriptive authority is not necessary in light of the Commission's general authority to insert a standard reopener clause permitting it to consider and resolve fishway issues at an appropriate time and in an appropriate way.[5] We think again that Congress has already decided this in the quite special case of a fishway prescription. In so doing, Congress has apparently given great weight to conservation objectives in the preservation of means for fish to pursue their migratory inclinations.

In addition, we believe that the Commission has proffered adequate reasons for the inclusion of the Section 18 reservation. As noted, Congress since 1906 had enacted provisions for fishway prescriptions similar to the present provisions of Section 18. This presumably indicates a longstanding congressional concern with conservation considerations involving fish migration. The Commission seems to us to have given a reasonable construction to these longstanding provisions. If there are complaints as to their economic impact they must be addressed to the Congress.

The petitions for review are DENIED.

---

**5.** The standard reopener article contained in the license of both Petitions states that:

The License shall, for the conservation and development of fish and wildlife resources, construct, maintain, and operate, or arrange for the construction, maintenance, and operation of such reasonable facilities, and comply with such reasonable modifications of the pro-ject structures and operation, as may be ordered by the Commission upon its own motion or upon the recommendation of the Secretary of the Interior or the fish and wildlife agency or agencies of any State in which the project or a part thereof is located, after notice and opportunity for hearing.