[No. 23367-3-II. Division Two. August 20, 1999.]

SKOKOMISH INDIAN TRIBE, *Appellant*, v. TOM FITZSIMMONS, *as Director of the Department of Ecology*, ET AL., *Respondents*.

*Mason D. Morisset* of *Morisset Schlosser Ayer & Jozniak*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Jennifer Tanya Barnett, Assistant*, for respondents.

*Richard Andrew Agnew* of *Van Ness Feldman, P.C.*, on behalf of the City of Tacoma, amicus curiae.

HUNT, J. — The Skokomish Indian Tribe (Tribe) appeals dismissal of its petition to have declared illegal the Washington State Department of Ecology's (DOE/Department) refusal to object to the City of Tacoma's (City) licensing proposal for its Cushman Dam Project. DOE's statement of compliance or noncompliance was an essential step in the Federal Energy Regulatory Commission's (FERC) processing of this proposal. Although DOE acknowledged that the proposal did not comply with the Washington State Coastal Zone Management Program (CZMP), DOE issued a "no objection" letter. After receiving this letter, FERC issued the license, and the trial court dismissed the Tribe's petition as moot. We reverse because: (1) the Tribe's petition is not moot; and (2) DOE acted arbitrarily and capriciously when it determined that the

Project was substantially noncompliant with state law, yet failed to object to FERC.

## FACTS

On November 15, 1974, the City of Tacoma applied to the Federal Energy Regulatory Commission for licensing of the Cushman Dam Project (Project), which affects the flow of the flood-prone Skokomish River. Since then, the Skokomish Indian Tribe has actively participated in the proceedings as an interested party.

As part of the licensing process, FERC is required to determine whether the proposed project comports with the Coastal Zone Management Program of the state in which the project is to be undertaken. 16 U.S.C. § 1456(c)(1)(A). As required by 16 U.S.C. § 1456(c)(3)(A), the City included with its licensing application a "consistency certification" that the proposed licensing of the Cushman Dam Project complied with Washington's federally-approved state CZMP.[1] A copy of this consistency certification was also furnished to the Washington State Department of Ecology.

Under the federal Coastal Zone Management Act (CZMA), a state or its designated agency has six months within which to concur or to object to a consistency certification. 16 U.S.C. § 1456(c)(3)(A). If the state does not respond, the state's concurrence is conclusively presumed. *Id.* Here, DOE had until May 30, 1997, to object to or to concur with the City's consistency certification for the Project.

The Tribe was aware of the approaching deadline and rumors that DOE intended to waive concurrence or objection to the Project's licensing. On May 6, 1997, the Tribe petitioned the Thurston County Superior Court for a writ

---

[1]Washington's federally-approved CZMP is the Shoreline Management Act of 1971 (SMA), RCW 90.58.

of mandamus,[2] seeking to compel DOE to respond formally to the City's consistency certification. The next day, May 7, 1997, the Tribe received a copy of DOE's letter to the City and FERC, which read as follows:

> The Washington State Department of Ecology has completed its review of the proposed operation of the Cushman Hydroelectric Facility, and has reached a conclusion regarding project compliance with the enforceable policies of Washington's Coastal Zone Management Program.
>
> *We have concluded that the project as proposed by Tacoma does not comply with Washington's Coastal Zone Program, and will not be conducted in a manner consistent with the program requirements.* However, *we find ourselves in an untenable position in exercising our responsibility to object to Tacoma's certification of consistency* because our objection to certification would likely cause the project to be caught in a procedural gridlock, rather than address the substantive issues related to the project. For a project such as Cushman that has already taken an exorbitant amount of time to license, *we have determined that the purposes of the Coastal Zone Program will be better met by declining to object.*
>
> Therefore, in order to avoid any additional delay to the licensing of this project, *Ecology hereby declines its right to take action under its Coastal Zone Management authority with respect to Tacoma's license application pending currently before the Federal Energy Regulatory Commission (FERC).*
>
> In no sense should this decline be construed as a change of position as to what elements are required for Coastal Zone Management Program compliance by Tacoma, or other applicants for federal approval. Neither should this action be construed as a change **of** position as to the minimum flow regime **necessary** required for the project to be operated in compliance with state water quality standards. *Ecology seeks merely to facilitate the ability of FERC to issue the license so that parties who intend to appeal the license may proceed without delay.*
>
> Ecology believes the FERC recommended flow regime of 240

---

[2]*Skokomish Indian Tribe v. Tom Fitzsimmons et al.*, No. 97-2-00992-5 (Thurston County Super. Ct. Aug. 7, 1997).

cfs (or natural inflow, whichever is less, during the summer recreation period between Memorial Day and Labor Day), plus sediment flushing flows of 400 cfs for the month of November, is the absolute minimum flow necessary to adequately protect designated uses within the North Fork of the Skokomish River. The critical concern of public health and safety during flood events is the only cause for caution in requiring higher flow levels. We re-emphasize our earlier comments to FERC that an adaptive flow regime with a goal of increasing flows in the river is the appropriate strategy for this project. An adaptive flow regime affords the opportunity to balance the designated uses with public health and safety concerns. Moreover, in expressing support for an adaptive flow regime, Ecology wishes to notify other parties that it does not object to a goal of higher flow requirements to the extent such higher flows do not result in a violation of water quality standards, otherwise prevent the attainment of designated uses, or increase flood hazards.

Finally, in the course of the licensing proceeding to date, there has been a considerable amount of information submitted regarding the effect of Tacoma's diversion on channel aggradation of the mainstem Skokomish River and the reduced ability of the river to convey instream flow. The extent to which re-introduction of higher flows, by themselves or in conjunction with other actions, would improve channel conveyance capacity and cause additional bedload material to be transported to the Skokomish River estuary is a subject of extensive debate. *We support FERC staffs' recommendation that the applicant must commit to participation in a post-licensing evaluation of the effect that higher instream flows have on conveyance capacity in the Skokomish River mainstem. This evaluation will provide information necessary to determine potential strategies to accommodate increase in North Fork flows without cor[o]llary increase in flood threats to public health and safety.*

Ecology hopes that declining further CZM review on the project proposal before FERC, will allow FERC to proceed with licensing without further delay. This letter constitutes the formal agency action on CZM related to this licensing proceeding. Other issues, including those related to Tacoma's underlying water right for the project will be addressed in other venues.

(Emphasis added.) Because this letter constituted a re-

sponse by DOE to the City's consistency certification, the trial court denied the Tribe's application for writ of mandamus to compel a response. The Tribe did not appeal.

On May 30, 1997, FERC issued the requested license. On June 5, 1997, in Thurston County Superior Court, the Tribe filed a petition for review of the Department's May 6, 1997, letter. On May 1, 1998, the court dismissed the Tribe's petition for review as moot and requested that an order of dismissal be drafted with no findings or conclusions. The court ruled that even if it had jurisdiction to address the Tribe's claims, the case would be moot because the State's window of opportunity to object to the Project was closed when the six-month period expired and FERC issued the license. The Tribe appealed, and the City filed an amicus brief.

## ANALYSIS

We first address whether the Tribe's petition is moot. We next address whether DOE acted arbitrarily and capriciously in declining to object to the City's certification that the Project complied with state law, when DOE explicitly acknowledged that the Project as proposed did not comply with state law.[3]

### I. MOOTNESS

■ FERC licensing processes are often contingent on legal determinations made outside FERC proceedings. *See, e.g.,* 16 U.S.C. § 802(a)(2) (each license application submitted to FERC must contain evidence that the applicant has complied with certain state laws).

> An applicant for a license must show the Commission he has under state law the right to divert the water for the use of which he desires a license. Unless he has that right, we think the Commission cannot lawfully issue a license to him.

---

[3]We do not have before us the issue of whether the Cushman Dam Project does or does not comply with the CZMP, nor is the record developed to allow such review.

*Niagara Mohawk Power Corp. v. Federal Power Comm'n*, 202 F.2d 190, 207 (D.C. Cir. 1952), *aff'd*, 347 U.S. 239, 74 S. Ct. 487, 98 L. Ed. 666 (1954).

Here, FERC had issued the license before the trial court ruled on the Tribe's petition. DOE essentially argues that because a Washington state court cannot order FERC to rescind the license it issued to the City, a state court cannot order "effective relief" and, therefore, the Tribe's petition is moot. The Tribe counters that, armed with a state court judgment that DOE acted improperly, it could petition FERC and then the federal courts, if necessary, to have FERC reopen the City's application. We agree with the Tribe.

A case is not moot if a court can provide effective relief. *Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.*, 131 Wn.2d 345, 350-51, 932 P.2d 158 (1997). Although a state court cannot directly order FERC to reconsider its licensing decision, the case is not moot if a state court opinion is essential to the Tribe's petitioning FERC to reopen the Project's application. There are neither facts nor law before us suggesting that the Tribe could not use a state court judgment to ask FERC to reopen. Moreover, DOE has not countered the Tribe's assertions that FERC will not grant a petition to reopen based upon bare allegations of state agency misconduct,[4] absent a supporting state court judgment that the state agency acted contrary to state law. That a state court cannot directly order FERC to reopen the City's application does not mean that a state court judgment can have no impact on such an attempt by the Tribe.

The federal Court of Appeals may review a FERC ruling

to determine whether the Commission "abused or exceeded its authority," whether its action is supported by substantial evidence and whether it has given "reasoned consideration" to and adequately articulated the relevant factors.

---

[4]Such a petition would necessarily force FERC to delve into issues of state administrative law, which FERC would presumably decline to do.

*Wisconsin Pub. Serv. Corp. v. Federal Energy Regulatory Comm'n*, 32 F.3d 1165, 1168 (7th Cir. 1994). But a party may not appeal to the federal courts for relief from a FERC decision without first petitioning the FERC for rehearing. 16 U.S.C. § 825*l*(b); *Town of Norwood v. Federal Energy Regulatory Comm'n*, 906 F.2d 772, 774 (D.C. Cir. 1990). Under 16 U.S.C. § 1456, one factor FERC must consider on a petition for rehearing is whether its decision complies with the CZMP of the state in which the project will be carried out. *Russo Dev. Corp. v. Thomas*, 735 F. Supp. 631, 638 (D.N.J. 1989). And "the Commission has an affirmative duty to inquire into and consider all relevant facts." *Scenic Hudson Preservation Conference v. Federal Power Comm'n*, 354 F.2d 608, 620 (2d Cir. 1965).

The Tribe can use our ruling to ask FERC to reopen the City's application. If FERC declines, the Tribe can seek review in the federal courts. 16 U.S.C. § 825*l*.[5] Thus although not providing direct relief to the Tribe, a state court judgment in its favor would enable review of FERC's licensing of the Project. Concluding that a state court can then provide "effective relief," we hold that the case is not moot.

## II. FORUM

■ The City, a nonparticipant in the proceedings at the trial court level and amicus on appeal, argues that the Tribe must pursue its dispute in federal court. Although this proposition would clearly be true if, for example, the Tribe were suing FERC directly, that is not this case. Here, the Tribe is suing a state agency because it failed to enforce state law according to its delegated authority. This claim clearly belongs in state court.[6]

That the Tribe may eventually need to enter federal court

---

[5]Appeal of a FERC licensing decision is directly to the Federal Courts of Appeals rather than to Federal District Court. *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 910-11 (9th Cir. 1989).

[6]Furthermore, the Tribe would likely be unable to sue DOE in federal court. *See Seminole Tribe v. Florida,* 517 U.S. 44, 54-55, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) (tribe cannot sue state in federal court without consent of state).

does not mean that initial review of state agency action should, or even would, be addressed by a federal court. The cases cited by the City are inapposite because they concern suits either directly against the FERC or based upon federal provisions. This case, by contrast, involves only state law questions at this juncture. The usual method for review of a state agency action is a challenge in state superior court. *See, e.g., Towle v. Department of Fish & Wildlife*, 94 Wn. App. 196, 971 P.2d 591 (1999).

### III. Arbitrary and Capricious

As part of its hydroelectric project licensing process, the federal government requests state input concerning a proposal's compliance or noncompliance with state law. 16 U.S.C. § 1456(c). Here, the state, through DOE, did offer a response. Yet, in its "consistency certification" letter to FERC and the City, DOE readily acknowledged the Project's deficiencies under state law, its "responsibility to object," and its declination to do so. Both in this letter and at oral argument before this court,[7] DOE acknowledged, in agreement with the Tribe, that the Project proposal had substantial deficiencies in releasing too little water, which can cause flooding in some areas, and insufficient flow of water in others.

"Administrative agencies have those powers expressly granted to them and those necessarily implied from their statutory delegation of authority." *Tuerk v. Department of Licensing*, 123 Wn.2d 120, 124-25, 864 P.2d 1382 (1994). Citing RCW 34.05.570(4)(b), DOE argues that it had no duty to issue a response of any kind to FERC and that therefore, we cannot compel it to rescind its May 6, 1997,

---

[7]After oral argument, DOE filed a "Correction," seeking to strike its representation that the Project continues to fail to comply with state law, and the Tribe filed in response a Motion To Strike DOE's Correction. DOE's representations at oral argument do not alter the critical fact that DOE in its May 7, 1997, letter expressly acknowledged the Project's noncompliance with state law as described in the City's consistency certification. It is irrelevant to our decision and outside the record on appeal whether the Project has since been altered to comply with state law.

letter to FERC or to issue a new letter. But RCW 34.05-.570(4)(b) does not apply here because DOE *did* issue a response letter to FERC. In DOE's own words, this letter constituted "formal agency action"; thus, we review this action under RCW 34.05.570(4)(c).

RCW 34.05.570(4)(c) provides:

> Relief for persons aggrieved by the performance of an agency action, including the exercise of discretion . . . can be granted only if the court determines that the action is:
>
> (i) Unconstitutional;
>
> (ii) Outside the statutory authority of the agency or the authority conferred by a provision of law;
>
> (iii) *Arbitrary or capricious*; or
>
> (iv) Taken by persons who were not properly constituted as agency officials lawfully entitled to take such action.

(Emphasis added.) The Tribe argues that DOE's issuance of the May 6, 1997, letter was arbitrary and capricious. We agree.

 Although we must give due deference to the "specialized knowledge and expertise of the administrative agency," *Hayes v. Yount*, 87 Wn.2d 280, 289, 552 P.2d 1038 (1976), such deference does not extend to agency actions that are arbitrary, capricious, and contrary to law. Under the arbitrary and capricious standard, we reverse only if an agency action was "willful and unreasoning, and taken without regard to the attending facts or circumstances." *ITT Rayonier, Inc., v. Dalman*, 122 Wn.2d 801, 809, 863 P.2d 64 (1993). Judging whether an agency's decision was arbitrary and capricious involves evaluating the evidence considered by the agency in making its decision. *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983). "Where there is room for two opinions, action is not arbitrary and capricious even though one may

believe an erroneous conclusion has been reached." *Id.* at 695 (citation omitted).

### A. Washington State Law

■ Washington's Shoreline Management Act of 1971 (SMA) provides, in pertinent part:

> The state, through the department of ecology and the attorney general, shall represent its interest before water resource regulation management, development, and use agencies of the United States, including among others, the federal power commission [FERC], environmental protection agency, corps of engineers, department of the interior, department of agriculture and the atomic energy commission, before interstate agencies and the courts with regard to activities or uses of shorelines of the state and the program of this chapter. *Where federal or interstate agency plans, activities, or procedures conflict with state policies, all reasonable steps available shall be taken by the state to preserve the integrity of its policies.*

RCW 90.58.260 (emphasis added). This statute appoints DOE as Washington's representative before FERC; it also directs DOE to take "all reasonable steps available" to preserve the integrity of the state's SMA policies. Furthermore, RCW 90.58.900 provides that chapter 90.58 is to be "liberally construed to give full effect to the objectives and purposes for which it was enacted."

RCW 43.21A.064 lists the powers and duties of the Director of DOE with regard to water resources. In amending this section in 1995, the Legislature found and declared:

> (1) The federal energy regulatory commission, under the federal power act, licenses hydropower projects in navigable waters and regularly and extensively inspects facilities for safety; and

> (2) Nothing in this act alters or affects the department of ecology's authority to: (a) Participate in the federal process of licensing hydropower projects; or (b) *ensure that hydropower projects comply with federal statutes such as the coastal zone management act and . . . all applicable state law.*

Laws of 1995, ch. 8, § 1. (Emphasis added.) The Legislature explicitly intended that DOE have authority to ensure that hydropower projects comply with applicable state law, including the SMA. DOE's refusal to object to a project that it acknowledges to be in violation of the SMA directly undercuts the state's SMA.

## B. DOE's Action

Both the federal and state regulatory schemes in this case would be rendered meaningless if DOE could choose not to follow procedures prescribed by law to ensure that the Cushman Project complies with state law. Here, DOE acknowledged that the City's proposal was inconsistent with state law. Nevertheless, DOE declined to object to the City's consistency certification for reasons unrelated to the accuracy of the certification. We hold that where DOE explicitly acknowledged that its decision was inconsistent with state law, that decision was arbitrary and capricious.

## IV. EXHAUSTION OF REMEDIES

■ DOE argues that we may not consider the merits of the Tribe's claim because the Tribe failed to exhaust its administrative remedies. The Tribe responds that it was not required to pursue an administrative appeal. We agree with the Tribe.

RCW 34.05.534 limits the ability of a party to file a petition for judicial review of an administrative agency action:

> A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged, or available within any other agency authorized to exercise administrative review . . . .

The normal route of appeal from certain DOE decisions is through the Pollution Control Hearings Board (PCHB). RCW 43.21B.010 ("The purpose of the pollution control hearings board is to provide for a more expeditious and ef-

ficient disposition of appeals with respect to the decisions and orders of the department and director . . . ."); *see also* RCW 43.21B.001. But RCW 43.21B.110 limits the PCHB's jurisdiction:

> (1) The hearings board shall only have jurisdiction to hear and decide appeals from the following decisions of the department [or] the director . . .
>
> . . . .
>
> (c) The issuance, modification, or termination of any permit, certificate, or license by the department . . . .

DOE argues that its letter encompasses an action reviewable under this provision. The plain language of section (c) makes clear that it applies only to the "issuance, modification, or termination of any permit, certificate, or license *by the department* . . . ." (Emphasis added.) The "permit, certificate, or license" at issue here is one issued by FERC, not by DOE.

Nevertheless, DOE argues that its action in this case was a "license" under the Administrative Procedure Act (APA) and, thus, is reviewable by the PCHB. "License," as DOE notes, is defined broadly by the APA: " 'License' means a franchise, permit, certification, approval, registration, charter, or similar form of authorization required by law . . . ." RCW 34.05.010(9)(a).

But DOE's May 6, 1997, letter does not fall within even this broad definition of "license." With respect to the City's Cushman Dam hydroelectric proposal, DOE was not required by law to "authorize" anything, nor was it required to issue "a franchise, permit, certification, approval, registration, [or] charter." Rather, the law merely allotted six months within which it could concur or object to *the City's consistency certification*; if DOE failed to act within that time, its concurrence would be presumed. 16 U.S.C. § 1456(c)(3)(A). Thus, here, FERC's issuance of a hydroelectric license to the City was not subject to DOE approval in the same manner that amendment of a water

district's comprehensive water and sewer plan was subject to DOE approval in *Watershed Defense Fund v. Riveland*, 91 Wn. App. 454, 959 P.2d 130 (1998). Here, FERC could issue the license without express DOE approval.[8]

In *Watershed Defense Fund*, we held that DOE's approval of such amendment was a "license" within the meaning of RCW 43.21B.110(c), such that the Fund was required to exhaust administrative remedies by appealing DOE's decision to the PCHB before resorting to court action. But here, no such DOE "license" is involved; thus, PCHB's exclusive jurisdiction was not triggered for the Tribe's initial challenge to DOE's failure to object to the City's consistency certification. Unlike *Watershed Defense Fund*, here, "by the clear language of the statutory definition of 'license,' " the Tribe's petition does not necessarily fall within the exclusive jurisdiction of the PCHB. *Watershed Defense Fund*, 91 Wn. App. at 459-60. Because the Tribe's claims do not stem from any DOE action encompassed by RCW 43.21B.110, the Tribe was not required to appeal to the PCHB before seeking judicial review of DOE's failure to comply with state law.

## CONCLUSION

We reverse and remand with instructions to DOE to issue a new letter in response to the City's "consistency certification." This letter shall: (1) comport with state law; (2) accurately state whether the City's certification, that the Cushman Dam Project complies with the Washington State CZMP, is correct; and (3) contain DOE's concurrence in or objection to the City's certification, depending on whether the Project, *as certified by the City*, complies with state law.

BRIDGEWATER, C.J., and MORGAN, J., concur.

---

[8]But it could not issue the license if DOE had expressly objected to the City's certification of consistency with state law. 16 U.S.C. § 1456(c).