[No. 31556-4-II. Division Two. July 7, 2005.]

*In the Matter of the Point Allen Service Area.*

GARRISON FIRST FAMILY LIMITED PARTNERSHIP, *Appellant*, v. THE DEPARTMENT OF HEALTH ET AL., *Respondents*.

292

*Gregory M. Miller*, for appellant.

*Robert M. McKenna, Attorney General*, and *Jacqueline L. Brown Miller, Assistant*, and *Gregory C. Narver* (of *McNaul Ebel Nawrot Helgren & Vance, P.L.L.C.*), for respondents.

¶1 VAN DEREN, J. — This matter arises from a protracted dispute between the Garrison First Family Limited Partnership (GFFLP)[1] and the Point Allen Water Association (PAWA), a Washington nonprofit corporation licensed to supply water to property owners within its service area near the south tip of Camano Island, Washington. It follows two civil lawsuits in Island County Superior Court, the first in 1991 and the second in 1992; mediation with Judge Charles S. Burdell, Jr., of Judicial Arbitration and Mediation Services; settlement agreements in 1992 and 1994; an agreement for Christon C. Skinner to referee issues in the 1992 lawsuit; arbitration with Skinner in 1997 under the 1994 settlement agreement; and further action GFFLP initiated in Island County Superior Court in 1998 to set aside Skinner's December 15, 1997 decision and to nullify the 1994 settlement agreement. In its 1998 decision, the Island County Superior Court did not vacate Skinner's arbitration decision or the 1994 settlement agreement. Neither party appealed the trial court's decision, nor did they pursue or exhaust the many remedies that court described.

¶2 The 1994 settlement agreement expressly gave GFFLP the right to reopen the 1992 lawsuit if the Island County Commissioners or the Department of Health (DOH) continued to refuse revision of the PAWA service area boundaries. GFFLP did not pursue this remedy. Instead, in February 2001, GFFLP applied to DOH for an owner's operating permit to serve the Point Allen service area.

¶3 DOH denied GFFLP's request because GFFLP was not the owner of the water system. An administrative law judge (ALJ) upheld DOH's denial of the permit in a sum-

---

[1] GFFLP is the successor in interest to Joseph B. and Bette J. Garrison. As the successor in interest, GFFLP has acquired all rights and responsibilities of the Garrisons, particularly as it concerns the infrastructure, water rights, and delivery of water within the Point Allen service area. For the sake of clarity, GFFLP will be used throughout this opinion to refer to both the Garrisons and to the successor partnership. The date of succession is not before us and GFFLP is the appellant here.

mary judgment proceeding. Thurston County Superior Court upheld the ruling of the ALJ.

¶4 GFFLP now appeals the trial court's order. GFFLP asserts that DOH erred by (1) concluding that only the owner of a water system can apply for an operating permit under the applicable regulations and statutes, (2) refusing to condition the continuation of PAWA's operating permit on the provision of service to GFFLP or to revoke its operating permit for failure to provide service to GFFLP's remaining lots, and (3) considering an improper arbitrator's award determining ownership of the water system. GFFLP requests attorney fees and costs under RCW 4.84.350; and PAWA requests its costs under RAP 14.3. Finding no error, we affirm and award costs to PAWA.

## FACTS

¶5 In 1974, the Garrisons incorporated PAWA as a non-profit corporation to provide a water system in Point Allen. At one time, the Garrisons owned all of the properties in the PAWA service area. The Garrisons paid for the development and installation of the water system infrastructure for PAWA. GFFLP is the successor in interest to the Garrisons. It continues to own a substantial number of lots in the service area.

¶6 In 1975, the Department of Ecology issued the first groundwater rights to PAWA and DOH approved the system for 28 service connections. It approved the system for 99 connections in 1986, which was sufficient for the entire service area. In January 1991, however, DOH suggested that PAWA observe a 60-connection limit until source capacity was determined.

¶7 In 1991, GFFLP filed the first lawsuit against PAWA in Island County Superior Court, seeking 26 water hook-ups. On January 9, 1992, DOH reduced PAWA's service connections to 50. The reduction created further impetus for this ongoing dispute.

¶8 In 1992, as a result of mediation, the parties entered into a settlement agreement. Under this agreement, the parties planned to work together to make necessary improvements to achieve greater source production for

PAWA's water system. But later that year, GFFLP filed a second lawsuit against PAWA to rescind the settlement agreement. The parties agreed to appoint Skinner to referee issues in the lawsuit.

¶9 DOH began issuing water system operating permits to PAWA in 1993, shortly after establishing the permitting program. And for many years now, DOH has been entangled in the legal dispute between PAWA and GFFLP.

¶10 In 1994, DOH denied a joint request by PAWA and GFFLP to allow PAWA to serve GFFLP's lots. DOH was unwilling to approve new connections until demand decreased within PAWA's service area or until PAWA obtained new source capacity. To resolve the dispute, PAWA requested that Island County reduce the area PAWA served. The County refused this request.

¶11 In 1994, PAWA and GFFLP entered into a settlement agreement relating to the 1992 litigation in Island County. But the settlement agreement did not fully resolve the dispute between the parties. In 1995 and 1996, the Island County Commissioners denied GFFLP's request to form a new water system and PAWA's request to reduce its service area under the Public Water System Coordination Act of 1977 (Coordination Act).[2] Chapter 70.116 RCW.

¶12 In 1996, GFFLP asked DOH to withhold issuance of an operating permit to PAWA, claiming that PAWA did not own the system. DOH denied the request because the public health criteria for denying or revoking a permit had not been satisfied. Following DOH's denial, GFFLP made several attempts to obtain an operating permit for the PAWA water system, claiming that GFFLP was the true owner of

---

[2] Under the Coordination Act, a county develops a "coordinated water system plan" (CWSP) for designated areas. In July 1990, DOH approved a CWSP for Island County. PAWA was designated as the purveyor for the Point Allen service area. A "purveyor" is the owner or operator of the system. RCW 70.116.030(4). Unless the local legislative authority determines that existing purveyors are unable to provide the service in a timely and reasonable manner, no other purveyors are permitted to establish a water system within the area the plan covers. An existing purveyor is unable to provide the service in a timely manner if the water cannot be provided to an applicant for water within 120 days, unless otherwise specified by the legislative authority. RCW 70.116.060(3)(b).

the system. DOH encouraged the parties to resolve their disputes through the Coordination Act.

¶13 In December 1997, under the 1994 settlement agreement, the arbitrator determined that PAWA had a prescriptive easement to the Point Allen water system. On January 6, 1998, the arbitrator issued a letter clarifying that the "water system infrastructure . . . is owned by PAWA."[3] Administrative Record (AR) at 175.

¶14 Subsequently, GFFLP returned to Island County Superior Court seeking to set aside the arbitrator's ruling and to nullify the 1994 settlement agreement. On December 18, 1998, the Island County Superior Court issued a letter decision denying GFFLP's requests.

¶15 On February 28, 2001, GFFLP submitted an application to DOH, once again requesting an owner's operating permit for the Point Allen service area. DOH denied the request because GFFLP was not listed as the water system owner. GFFLP appealed. An ALJ upheld DOH's denial on summary judgment. The trial court affirmed their ruling. This timely appeal follows.

## ANALYSIS

### I. Standard of Review

¶16 The Administrative Procedure Act (Act), chapter 34.05 RCW governs our review of administrative agency actions. This Act specifies nine grounds for relief. Former RCW 34.05.570(3) (1995). GFFLP claims that it is entitled to relief based on the following grounds:

(b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;

(c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;

---

[3] The Island County Superior Court did not address this letter when it denied GFFLP's motion to set aside the arbitrator's decision.

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, . . .

(f) The agency has not decided all issues requiring resolution by the agency;

. . . .

(i) The order is arbitrary and capricious.[4]

Former RCW 34.05.570(3). GFFLP does not directly address all of these standards in its appellate brief or Petition for Review. The crux of GFFLP's argument appears to be that the agency erroneously interpreted or applied the law.

¶17 The ALJ decided this case on summary judgment. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 76-77, 11 P.3d 726 (2000).

¶18 In an administrative appeal, we disregard the trial court's findings and conclusions and review the administrative record by applying the Act's standards directly to the agency record. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). The party asserting invalidity bears the burden of establishing it. Former RCW 34.05.570(1)(a); *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998).

¶19 Substantial weight must be accorded an agency's interpretation of the law when the subject matter falls within the agency's special area of expertise. *Bellevue Farm Owners Ass'n v. Shorelines Hearings Bd.*, 100 Wn. App. 341, 362, 997 P.2d 380 (2000). But where the construction of statutes is at issue, the court will not defer to agency

---

[4] An agency action is arbitrary and capricious when it is " 'willful and unreasoning, and taken without regard to the attending facts or circumstances.' " *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 871, 975 P.2d 567 (1999) (quoting *ITT Rayonier, Inc. v. Dalman*, 122 Wn.2d 801, 809, 863 P.2d 64 (1993)).

interpretation of the statute where that interpretation conflicts with the statute. *Postema*, 142 Wn.2d at 76-77. Ultimately, it is for the court to determine the meaning and purpose of a statute. *City of Redmond*, 136 Wn.2d at 46.

## II. DOH's Refusal to Issue Permit to GFFLP

██ ¶20 GFFLP argues that ownership is not a statutory requirement for a water system operating permit. DOH responds that both the relevant statute and the applicable department rules require ownership.

¶21 Former RCW 70.119A.110(1) (1991) states in relevant part:

> No person[5] may operate a group A public water system unless the person first submits an application to the department and receives an operating permit as provided in this section. A new application must be submitted upon any change in ownership of the system.

DOH contends that the second sentence in the above provision would not mandate filing a new application upon "change in ownership," unless the statute required ownership for obtaining an operating permit in the first place. This is a reasonable interpretation of the statutory language. Nevertheless, neither former RCW 70.119A.110(1) nor any other provision within the chapter contains an explicit ownership requirement. Chapter 70.119A RCW.

¶22 Former RCW 70.119A.110(7) allows DOH to adopt rules related to public water systems. The rules it adopted require that a party own the water system before submitting a permit application for that system. For instance, WAC 246-294-020 states, "Owners of all Group A water systems shall obtain an annual operating permit from the department for each system owned." WAC 246-294-030(1) further provides:

---

[5] RCW 70.119A.020(11) states, " 'Person' includes, but is not limited to, natural persons, municipal corporations, governmental agencies, firms, companies, mutual or cooperative associations, institutions, and partnerships. It also means the authorized agents of any such entities."

> No person may operate and no owner shall permit the operation of a Group A water system unless the owner annually submits an application along with the required fee to the department and the department has issued an operating permit to the system owner.

Numerous other DOH rules also contemplate ownership as a prerequisite to obtaining an operating permit. *See, e.g.,* WAC 246-294-050(7) ("owner" may appeal denial of operating permit); WAC 246-294-030(6) ("owner" is required to complete permit application).

¶23 GFFLP asserts that since an ownership requirement is not contained in the statute, it cannot be the basis for DOH's refusal to consider an operating permit application. This argument is without merit.

¶24 Former RCW 70.119A.110(1) presumes ownership as a requirement and former RCW 70.119A.110(7) explicitly grants DOH authority to develop rules pertaining to water operating permits and the permit application process. Thus, DOH did not exceed its authority by incorporating and specifying an ownership requirement in the rules. Such a requirement is consistent with former RCW 70-.119A.110(1) and is explicitly authorized by former RCW 70.119A.110(7).

¶25 Finally, we note that statutes should be read to avoid absurd results, because it is presumed that the legislature did not intend absurd results. *Glaubach v. Regence BlueShield,* 149 Wn.2d 827, 833, 74 P.3d 115 (2003); *State v. J.P.,* 149 Wn.2d 444, 69 P.3d 318 (2003). And it would be absurd to construe former RCW 70.119A.110(1) as allowing the issuance of an operating permit to an entity that does not own the water system in derogation of the rights of the entity that does own the system.

III. DOH's AUTHORITY TO REVOKE OR CONDITION OPERATING PERMITS

¶26 Next, GFFLP argues that PAWA's failure to extend water service to GFFLP's lots constitutes sufficient

grounds for DOH to revoke PAWA's operating permit. GFFLP further argues that if the permit is not revoked, it should be conditioned on the provision of service to GFFLP. DOH responds that GFFLP has failed to demonstrate any grounds to justify revoking PAWA's operating permit or imposing conditions on the permit.

¶27 Former RCW 70.119A.110(4) provides:

> At the time of initial permit application or at the time of permit renewal the department may impose such permit conditions, requirements for system improvements, and compliance schedules as it determines are reasonable and necessary to ensure that the system will provide a safe and reliable water supply to its users.

Additionally, former RCW 70.119A.110(5) gives DOH discretion to deny a permit renewal application for "good cause." But PAWA's initial or renewal application is not at issue in this case. Thus, these statutory provisions do not apply. Further, since PAWA has not extended service to GFFLP's lots, GFFLP is not presently a user of the PAWA water system and, therefore, cannot claim rights under former RCW 70.119A.110(4). Finally, even if the "good cause" provision were applicable, we conclude that GFFLP has failed to demonstrate "good cause," given the lengthy negotiation and litigation history between the parties and the Island County Superior Court's 1998 decision identifying the parties' remaining issues and possible means to address them.[6]

---

[6] The Island County Superior Court letter decision stated:

First, the parties expressly contemplated that the county or state would not allow the revision to the service area boundaries in paragraph 6 of the settlement agreement. In such an event, the parties agreed that Garrison could reopen the lawsuit and stipulated that Christon C. Skinner would act as a referee, pursuant to RCW 4.48 *et seq.*

Second, any appeal from the county commissioner's adverse decision may result in a reversal and a reduction in PAWA's service area. Questions still remain to be addressed, by either [DOH] or the court, as to whether jurisdiction to approve a reduction in PAWA's service area at the time in question belonged to the state, not the county, whether automatic approval by the board of county commissioners after 60 days was prescribed by statute, administrative code and the county's Critical Water Supply Plan (CWSP), and whether the county

 ¶28 In fact, only one regulation specifically addresses the revocation of an existing operating permit. WAC 246-294-050(5) provides:

> The department may revoke an operating permit or deny an operating permit application if the department determines that the system operation constitutes or may constitute a public health hazard to consumers.

It is undisputed that PAWA's failure to extend water service to GFFLP does not create a public health hazard to consumers and, thus, does not violate WAC 246-294-050(5).

 ¶29 GFFLP asserts that RCW 70.119A.100 gives DOH additional authority to revoke or deny an operating permit. RCW 70.119A.100, entitled "Findings," provides:

> The operating permit requirements shall be administered by the department and shall be used as a means to assure that public water systems provide safe and reliable drinking water to the public. The department and local government shall conduct comprehensive and systematic evaluations to assess the adequacy and financial viability of public water systems. The department may impose permit conditions, requirements for system improvements, and compliance schedules in order to carry out the purposes of chapter 304, LAWS OF 1991.

¶30 But specific grounds for relief cannot be inferred from a general expression of legislative intent. *See, e.g.,* RCW 34.05.322; *Judd v. Am. Tel. & Tel. Co.,* 116 Wn. App. 761, 769-70, 66 P.3d 1102 (2003) (Statutory policy statements do not give rise to enforceable rights in and of themselves; it is the statutory sections that follow the policy statement that provide the enforceability of certain rights.), *aff'd,* 152 Wn.2d 195, 95 P.3d 337 (2004). And nothing in the permissive language of RCW 70.119A.100 requires DOH to

---

contractually agreed in 1992 to allow PAWA to voluntary [sic] reduce service area boundaries.

Without deciding any issue, the court simply notes that several issues, including some of the above as well as others, have been raised by PAWA in its appeal to [DOH] and in its Petition for Review of the Board of Island County Commissioners' Action Pursuant to RCW 34.05.510 *et seq.* Clearly, the parties have not exhausted their remedies yet.

AR at 210 (footnotes omitted).

revoke PAWA's operating permit or to force PAWA to provide service to GFFLP's lots.

¶31 GFFLP further maintains that DOH has implied authority to revoke PAWA's permit because PAWA refuses to supply water to GFFLP. This argument is not persuasive. First, GFFLP can point to no law or regulation that requires a water system to expand service to all approved connections within a service area. Second, the existence of implied authority to revoke or condition a permit does not give rise to a mandatory duty to take action in any particular case.

¶32 DOH may well have implied authority to remedy statutory and regulatory violations in the provision of water service. But given the particular circumstances of this case, we hold that GFFLP's allegations against PAWA do not rise to this level. We further conclude that no legal basis exists for revoking PAWA's operating permit in the course of resolving GFFLP's request to obtain an operating permit for itself.

¶33 PAWA and GFFLP have failed to properly pursue the remedies the Island County Superior Court outlined and have failed to timely appeal the relevant decisions by the Island County Superior Court, the Island County Commissioners, and DOH. But these failures do not allow us to fashion a novel remedy on appeal from DOH's proper permitting decision.[7]

## IV. Reliance on Arbitration Decision

¶34 GFFLP argues that DOH was wrong to rely on the December 15, 1997 arbitration decision and the arbitrator's January 6, 1998 clarification letter to determine ownership of the Point Allen water system. GFFLP contends that the arbitrator was not authorized to determine ownership is-

---

[7] Furthermore, after the ALJ decided this case, the legislature enacted a new law related to municipal water supplies. Laws of 2003, 1st Sp. Sess., ch. 5. This law may provide additional means for GFFLP to address its desire for water service. But the proper application and interpretation of the new law is beyond the scope of this appeal.

sues, and the 1997/98 arbitrator's decision was not final, was internally inconsistent, and was, therefore, unenforceable. DOH and PAWA respond that these arguments are both flawed and irrelevant.

¶35 First, GFFLP contends that the arbitrator was not authorized to resolve the competing claims of ownership to the Point Allen water system infrastructure. But the arbitrator's ruling specifically determined that a "preliminary statement" about ownership was necessary in order to resolve the other issues in the ongoing dispute between PAWA and GFFLP. GFFLP raised the issue of the arbitrator's lack of subject matter jurisdiction in its motion to set aside the arbitrator's ruling, which the Island County Superior Court denied. The court ruled that the arbitrator had the authority to "[r]estrain and [e]njoin GFFLP from interfering with PAWA's possession and operation of the [Point Allen] water system." AR at 219. GFFLP did not appeal the trial court's decision, so its decision stands.

¶36 Next, GFFLP argues that the arbitrator's decision is unenforceable because it is not final. Washington courts accord substantial finality to arbitration decisions rendered under chapter 7.04 RCW. Generally, the court will not vacate an arbitration decision unless it is satisfied that the decision prejudiced substantial rights of the parties. RCW 7.04.160.[8] "The validity of an award, otherwise valid, shall not be affected by the fact that no motion is made to confirm it." RCW 7.04.150. Thus, the arbitration statute does not

---

[8] RCW 7.04.160 states:

In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud or other undue means.

(2) Where there was evident partiality or corruption in the arbitrators or any of them.

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

require court confirmation of an arbitration ruling for it to be final. Further, the Island County Superior Court already considered the finality argument and refused to set aside the arbitration award. A continuing dispute over the finality of the arbitrator's decision or the Island County Superior Court's refusal to set it aside could have been addressed on a direct appeal from that court's ruling. RCW 7.04.220. Again, neither PAWA nor GFFLP appealed the trial court's 1998 decision and, therefore, its ruling is final and binding.

¶37 Finally, GFFLP argues that the arbitrator's decision was contrary to law and internally inconsistent. The arbitrator initially determined that PAWA had a prescriptive easement to Lot 24, owned by GFFLP, where the facilities for the Point Allen water system are located. Later, the arbitrator clarified this portion of the decision in a letter stating that the "water system infrastructure . . . is owned by PAWA." AR at 175. The Island County Superior Court denied GFFLP's motion to set aside the arbitrator's decision and to nullify the 1994 settlement agreement. GFFLP did not argue the impropriety of the arbitrator's clarification in the motion to set aside the arbitrator's decision, and the court did not enter findings or conclusions about the clarification.

¶38 GFFLP correctly points out that the arbitrator's January 6, 1998 clarification letter may have been issued without following proper procedures and that it is potentially at odds with the arbitrator's December 15, 1997 ruling on the Point Allen water system ownership. But GFFLP had the opportunity to make this argument in the September 1998 motion to set aside the arbitrator's ruling and failed to do so.

---

(5) If there was no valid submission or arbitration agreement and the proceeding was instituted without either serving a notice of intention to arbitrate, as provided in RCW 7.04.060, or without serving a motion to compel arbitration, as provided in RCW 7.04.040(1).

An award shall not be vacated upon any of the grounds set forth under subdivisions (1) to (4), inclusive, unless the court is satisfied that substantial rights of the parties were prejudiced thereby.

¶39 To the extent that GFFLP objects to the arbitrator's decision, this is not the appropriate tribunal or proceeding to resolve the matter. These arguments either were, or should have been, addressed to the Island County Superior Court or addressed on appeal from that court's 1998 decision. RCW 7.04.160, .220. As it stands, the arbitration award has not been vacated, and DOH was correct to consider it when making a determination about ownership of the Point Allen water system.

¶40 DOH has historically sent the Point Allen water system application to PAWA, and PAWA representatives have consistently certified that PAWA owns the Point Allen system.[9] Without clear evidence to the contrary, DOH was entitled to rely on this representation, as well as the arbitrator's ruling, in making its permitting decision. Thus, DOH properly denied GFFLP's permit application.

## V. OTHER ISSUES

¶41 GFFLP challenges three of the findings of fact made by the ALJ—numbers 4.4, 4.8, and 4.18.[10] But GFFLP fails to discuss the basis of this challenge in its

---

[9] Pursuant to WAC 246-294-030(7), the applicant must certify that the information provided in the application is accurate and complete.

[10] ALJ Findings of Fact:

4.4 The out-of-court settlement did not resolve fully the dispute between the parties. In 1993, both parties asserted that ownership of the water system serving the Point Allen Service Area rested with them. In June 1993, [DOH] notified the parties of its intention not to become directly involved in the dispute and its intention to direct all correspondence to PAWA, as the owner of record. In 1993, pursuant to chapters 70.119A RCW and 246-294 WAC, [DOH] issued to PAWA an operating permit for a public water system. This water system served an area described as the Point Allen Service Area that is located on [the] southern end of Camano Island.

. . . .

4.8 In May 1996, [DOH] informed Mr. Garrison that none of the public health criteria for revoking or denying the permit were met. [DOH] informed Mr. Garrison that it considered the dispute between the property owners to be a matter to be resolved between the parties.

. . . .

4.18 Operating permits have been issued to PAWA from April 4, 1993 through April 25, 2001, and PAWA has paid the permit fees. [DOH] does not

brief, and it appears that the objection is to DOH's decision, based on these findings, rather than to the facts themselves. We need not consider alleged errors unsupported by citation to the record or legal analysis. RAP 10.3(a); *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989).

¶42 In any event, we review challenged factual findings to determine if substantial evidence supports them. Former RCW 34.05.570(3)(e); *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). Here, substantial evidence supports the challenged findings, which deal with DOH's actions from 1993 to 2001.

## VI. COSTS AND FEES

### A. PAWA

¶43 PAWA requests its costs under RAP 14.2 and 14.3, arguing that it has a clear and substantial interest in the outcome of this litigation. RAP 14.2 states that a nominal party, who has no real interest in the controversy, is not entitled to costs. RAP 14.2. Here, PAWA has a significant interest in protecting its operating permit for the Point Allen water system. Thus, since PAWA and DOH prevail, PAWA is entitled to its costs under RAP 14.3.[11]

### B. GFFLP

¶44 GFFLP seeks fees under the equal access to justice act. RCW 4.84.350. RCW 4.84.350(1) provides that a party seeking review of an agency action is considered the prevailing party only if it "obtained relief on a significant issue that achieves some benefit that the qualified party

---

have [GFFLP] listed as an owner of a Group A community water system. AR at 1344-47.

[11] Since PAWA has shown no statutory authority for attorney fees, it is not entitled to fees.

sought." GFFLP did not prevail on appeal and is therefore not entitled to fees.

¶45 We affirm.

ARMSTRONG and HUNT, JJ., concur.

Reconsideration denied September 13, 2005.